BERCEL GARAGES, INC v MACOMB COUNTY ROAD
COMMISSION

AMERICAN & IMPORT AUTO PARTS, INC v MACOMB COUNTY
ROAD COMMISSION

Docket Nos. 102010, 102011. Submitted January 17, 1991, at Lansing.
Decided June 18, 1991, at 9:50 A.M.

Bercel Garages, Inc., and its predecessor in interest, Sterling
Lumber & Supply, Inc., and American & Import Auto Parts,
Inc., brought actions in the Macomb Circuit Court against the
Macomb County Road Commission for damages resulting from
the diminution of the value of their properties caused by the
construction of a railroad overpass that left their properties
served only by a service road. Following a jury trial of the
consolidated actions before George R. Deneweth, J., judgment
was entered on verdicts of $32,600 in favor of Bercel and
$91,390 in favor of American. The defendant appealed.

The Court of Appeals *held:*

Damages arising out of loss of value of properties abutting a
public street or highway on which a grade separation for
railroad tracks is constructed are recoverable pursuant to the
provisions of the grade separation acts, 1893 PA 92 and 1925
PA 114. Because those acts provide that compensation shall be
paid by the appropriate governmental unit for damages result-
ing from the construction of a grade separation, there is no
need to show that the interference caused by the grade separa-
tion amounted to a taking in the constitutional sense. The trial
court properly instructed the jury that the measure of damages
was the loss in value of the plaintiffs' properties due to the
overpass, and that interference with access of traffic and with
air and light to the property, the obscurring of plaintiffs'

REFERENCES

Am Jur 2d, Highways, Streets, and Bridges § 57; Eminent Domain
§§ 215, 233, 238, 327.

Eminent domain: compensation of loss of view from owner's prop-
erty—state cases. 25 ALR4th 671.

Eminent domain: Use or improvement of highway as establishing
grade necessary to entitle abutting owner to compensation on
subsequent change. 2 ALR3d 985.

businesses from public view, and any decrease in business were factors which could be considered in determining damages.

1. These actions were properly brought pursuant to the statutory scheme set forth in the grade separation acts. Those acts clearly require that the governmental unit having control of a public street or highway on which a grade separation for railroad tracks is constructed shall compensate the holders of interests in the abutting properties. Accordingly, the damages are pursuant to the statutory scheme rather than by reason of a taking of the property in the constitutional sense.

2. The trial court did not abuse its discretion in striking the testimony of one expert witness on the basis that it would not be helpful to the jury or in allowing the testimony of a witness which the defendant claimed to be privileged on the basis that the defendant had listed that witness in a stipulation concerning valuation witnesses who could be called.

3. Bercel, as the successor of Sterling Lumber & Supply, was the sole owner of the Bercel property at the time of trial and was a proper party to the action. The trial court did not err in refusing to instruct the jury that only persons having an interest in the property greater than a month-to-month tenancy are entitled to recover under the grade separation acts.

4. The trial court properly refused to instruct the jury to apportion damages between American and its land contract vendors, because vendors were known to the parties but were not joined in the action. The 1893 grade separation act provides for apportionment of damages among different interests only where the holder of an interest in the property is a party to the action or is unknown. The remaining instructions to the jury also were proper.

5. The county was the proper party defendant because the overpass was built on a road under its control, even though the portion of the road in question was located in the City of Sterling Heights.

6. Defendant suffered no prejudice from the commencement of plaintiffs' actions before the expiration of the one-year period during which the defendant could have commenced an action for determination of proper compensation.

Affirmed.

1. HIGHWAYS — GRADE SEPARATIONS — ACTIONS — DAMAGES — EMINENT DOMAIN.

Compensation for persons holding interests in lands abutting a public street or highway for damages resulting from the construction of a grade separation where the street or highway

crosses railroad tracks is governed by statute and is available even if the interference caused by the grade separation does not amount to a taking of the abutting land in the constitutional sense (MCL 253.1 *et seq.*; MSA 9.1101 *et seq.*).

2. HIGHWAYS — GRADE SEPARATIONS — DAMAGES — APPORTIONMENT OF DAMAGES — JURY INSTRUCTIONS.

A trial court in an action brought pursuant to the grade separation acts may properly refuse to instruct a jury concerning apportionment of damages among those who hold interest in land abutting a public street or highway on which a grade separation is constructed where the holder of an interest in abutting land, although known, has not been made a party (MCL 253.16; MSA 9.1116).

3. HIGHWAYS — GRADE SEPARATIONS — DAMAGES.

The measure of damages in an action brought pursuant to the grade separation acts is the diminution of the value of the land abutting a grade separation caused by the grade separation; interference with access to the property and with light and air, the obscurring of the property from public view, and any decrease in business are factors which the jury may consider in determining damages caused by the construction of a grade separation (MCL 253.1 *et seq.*; MSA 9.1101 *et seq.*).

4. HIGHWAYS — GRADE SEPARATIONS — PARTIES — COUNTIES.

A county is responsible for damages caused by construction of a grade separation on a road under its control even if the grade separation is on a portion of the road located in a city (MCL 253.59; MSA 9.1149).

*Mason, Steinhardt & Jacobs, P.C.* (by *Walter B. Mason, Jr.*, and *Carolyn J. Crawford*), for the plaintiffs.

*Peterson, Hay & Comsa, P.C.* (by *William L. Hay*), for the defendant.

Before: NEFF, P.J., and SHEPHERD and McDONALD, JJ.

PER CURIAM. In these consolidated cases, defendant appeals as of right the judgment entered by the circuit court pursuant to a jury verdict in

favor of plaintiff American & Import Auto Parts, Inc., of $91,390, and in favor of plaintiff Bercel Garages, Inc., of $32,600, under the grade separation acts, MCL 253.1 *et seq.*; MSA 9.1101 *et seq.* (1893 PA 92), and MCL 253.51 *et seq.*; MSA 9.1141 *et seq.* (1925 PA 114). Unless otherwise indicated in this opinion, Bercel refers to both Bercel Garages, Inc., and Sterling Lumber & Supply, Inc. Plaintiffs' cross appeals were dismissed by this Court for lack of progress. We affirm.

I

These cases concern parcels of land which abut Sixteen Mile Road, which is under defendant's jurisdiction. Before the construction of an overpass in August 1981, Sixteen Mile Road between Mound and VanDyke was a divided highway with two lanes traveling east and two lanes traveling west, separated by a median. Railroad tracks running north and south intersected Sixteen Mile Road near plaintiffs' properties. Because trains were blocking traffic on Sixteen Mile Road, the overpass was constructed within the confines of the old median, and a two lane service drive was constructed to serve the adjoining properties. The construction was completed in July 1982.

Both before and after the overpass was constructed, a turnaround lane crossed the median, in front of American's property, and the level of the service drive was about equal to that of American's driveway. The pavement of the service drive was somewhat lower than that of the former road in front of Bercel's parcel.

American filed a complaint alleging that, as a result of construction of the overpass over the railroad right of way on Sixteen Mile Road, defendant had deprived American of access to its parcel.

Bercel filed a similar complaint alleging that defendant had taken its access to its parcel by constructing the overpass. At that time, Sterling owned the parcel and Bercel was a tenant occupying a portion of the parcel. The cases were consolidated for trial.

In count i of their complaints, plaintiffs alleged that they had been deprived of their property without just compensation in violation of the Michigan and United States Constitutions. In count ii of their complaints, plaintiffs alleged that defendant was liable under the grade separation acts, 1893 PA 92; 1925 PA 114 (the acts). The trial court granted defendant's motion to dismiss count i and limited plaintiffs' damages to those provided by the acts.

The parties stipulated before trial, and the trial court so ordered, that they would exchange expert appraisal reports by January 7, 1985, and that each party had the right to call valuation experts identified by the other side but not called by the identifying party. Phillip Pierce was listed on the order as a valuation expert allowed for defendant. He had been listed on defendant's supplemental witness list of December 13, 1984. Defendant thereafter filed a consolidated amended witness list which did not include Pierce.

Plaintiffs then filed a motion to compel defendant to produce the appraisal reports prepared by Pierce and another appraiser and to allow plaintiffs to depose those experts. Defendant moved for a protective order to prevent plaintiffs from deposing Pierce, contending that Pierce's testimony was privileged and not subject to discovery.

After a hearing was held on the motions, the trial judge entered an order granting plaintiffs' motion, reasoning that defendant had stipulated to the arrangement on the record.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10), and filed a motion in limine to preclude Pierce from testifying at trial on the basis that Pierce's opinions were work-product and privileged.

William Guynn testified at trial that he owned American & Import Auto Parts, which sold used auto parts. According to Guynn, before the overpass was constructed, the majority of American's business was due to walk-in trade.

The construction of the bridge made American's property less accessible from Sixteen Mile Road, and this affected the business' ability to attract customers and carry on its operations. The bridge blocked the view of the property from both eastbound Sixteen Mile Road and the south service drive. A motorist traveling east who missed the turnoff over the bridge would be forced to travel a half mile in order to turn around to come back. Past Bercel's property, the main road leveled off and motorists could see the businesses along Sixteen Mile Road.

Lawrence Bercel testified that he owned Bercel Garages and also Sterling Lumber & Supply. In 1981, Bercel Garages and Sterling Lumber & Supply had been two separate corporations and Lawrence Bercel, along with his father and brothers, had been officers and shareholders of both corporations. On January 1, 1984, Bercel and Sterling were merged into one company. Sterling's 1981 annual report indicates that the property had been purchased for $11,000, and the business had been operating on the property about twenty-one years.

Although there was no lease, Bercel occupied twenty percent of the parcel. That portion of the parcel contained model garages and was open to the public. According to Lawrence Bercel, the overpass had adversely affected his use of the

property and had caused access, theft, and vandalism problems. Much less traffic passed in front of the property.

Paul Stoppert, a realtor, real estate appraiser, and consultant, prepared a written appraisal report on both American's and Bercel's property. He opined that the principal detrimental effects of the construction were the almost total loss of exposure of these retail businesses and the total loss of access to the properties from Sixteen Mile Road. He also opined that, as a result of the overpass, American's total loss of value was about $139,000 and Bercel's total loss of value was $89,000. His calculation did not account for loss of business.

Edward Romesburg, a real estate broker, testified on behalf of defendant. According to Romesburg, who was involved in the Sixteen Mile Road overpass construction project, plaintiffs' properties increased in value after completion of the overpass. He opined that the increase in value was due to the properties' heavy industrial designation and proximity to a Volkswagen facility. In Romesburg's opinion, the overpass had no effect on the value of the properties, although improved drainage as a result of the project may have increased their value.

James Kaiser, a certified public accountant, testified at trial that the American property was then subject to a land contract.

Robert Butcher, a real estate appraiser, reviewed the market data and analysis contained in Romesburg's reports regarding both parcels and reviewed some data in his own files concerning additional land sales. Butcher opined that Romesburg's conclusion that land values were rising in the area was logical and that Romesburg's market analysis was the only way to logically evaluate the properties. Butcher could find no indication that

the properties were damaged because of the construction of the overpass. However, Butcher did not prepare an independent appraisal report, but merely determined whether Romesburg's reports demonstrated proper analysis in support of his logic. He also did not inspect American's property and did not make an independent analysis of its highest and best use.

Defendant rested and plaintiffs moved to have Butcher's testimony stricken because it was not based on personal knowledge. The court granted this motion.

Phillip Pierce testified that he had appraised the subject properties. He inspected the American property, considered its use, and investigated sales data for similar properties in the area to determine the effect of the grade separation on value. In Pierce's opinion, the total value of the American property before construction of the overpass was $289,000. After construction of the overpass, American's buildings and site improvements were no longer suitable in the long term for auto part sales and had no value, because the highest and best use of the land was as vacant industrial land. American's total damages due to grade separation was $142,500. Comparing the property to similar properties without an overpass, Pierce felt that the overpass had diminished the value of American's property.

Pierce also appraised the Bercel property before construction of the overpass, and the total value of the land and structures was $214,300. He opined that, after the overpass was constructed, Bercel's garage operation and sales building did not contribute to the highest and best use of the property, and therefore he did not include them in his replacement value. The total value of the Bercel

property was $132,700, and Bercel's total loss of value was $81,600.

The jury found that American was entitled to damages of $91,390 and that Bercel and Sterling were entitled to damages of $32,600.

II

Defendant first contends that the elevation of the median of Sixteen Mile Road and the diversion of the majority of the traffic to the elevated roadway did not give rise to a cause of action under the grade separation acts, because plaintiffs' loss of access was not so serious as to amount to a "taking" of their property and plaintiffs had a suitable alternative means by which to gain access to their property. Plaintiffs contend that, because their claims were based solely on the acts, whether an unconstitutional "taking" occurred is irrelevant, because the intent of the acts was to permit recovery when such a "taking" did not occur. We agree with plaintiffs.

The interference from the change of grade need not be so substantial as to constitute an unconstitutional taking in order to be compensable under the acts. MCL 253.1; MSA 9.1101 provides that, where a railroad crosses a public street or highway, the common council of the city may enter into an agreement with the railroad company to separate the grades at the crossing either over or under the railroad.

MCL 253.3; MSA 9.1103 authorizes the common council

> to settle or compromise with any person having an interest in any lands abutting on that portion of the street or highway within the city of which the grade is to be changed according to the said agree-

ment, and which may be damaged by the proposed change of grade . . . .

When settlement or compromise is not possible or is inexpedient, the section sets forth a procedure the council must follow before judicial review can take place. *Id.*

MCL 253.59; MSA 9.1149 also provides for the payment of damages:

> The . . . county . . ., participating in the cost of grade separation as provided in this act, shall pay compensation to the owners and others having an interest greater than month-to-month tenancy in the property abutting on that portion of said highway of which the grade is to be or has been changed, including those in possession of the premises having an interest greater than month-to-month tenancy, for damages, if any, sustained by reason of the change of grade . . . .

The section further provides that the institution of judicial proceedings shall be in accordance with the procedures set forth in 1893 PA 92.

Case law also holds that damages under 1893 PA 92 should not be measured in accordance with rules governing awards in cases where private property is taken for public use. *Detroit v Grand Trunk R Co,* 163 Mich 229, 234; 128 NW 250 (1910). The Court noted that the Legislature had provided the sole remedy in cases where consequential injuries follow a separation of grades. *Id.,* pp 236-237. See also *Mead v Michigan C R Co,* 174 Mich 521, 529; 140 NW 973 (1913). Accordingly, the interference from the change in grade need not amount to an unconstitutional taking in order to be compensable under the acts. *Gerson v Lansing,* 250 Mich 587, 589; 231 NW 125 (1930). Moreover, because plaintiffs' property abutted the por-

tion of Sixteen Mile Road where the grade was changed, they may properly recover under the acts.

### III

Defendant next contends that the trial court erred in striking Robert Butcher's testimony. We disagree.

This Court will not reverse a trial court's exercise of discretion to admit or exclude expert testimony absent a clear abuse of discretion. *Cirner v Tru-Value Credit Union,* 171 Mich App 163, 170; 429 NW2d 820 (1988).

In *Cirner,* this Court, citing *O'Dowd v Linehan,* 385 Mich 491, 510; 189 NW2d 333 (1971), set forth the requirements for the admission of expert testimony:

> (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that "belongs more to an expert than to the common man." [*Id.,* pp 168-169.]

The Court also stated:

> The "critical inquiry" with regard to expert testimony is "whether such testimony will aid the factfinder in making the ultimate decision in the case." In determining whether the expert testimony will aid the trier of fact, it is helpful to apply
> "the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved

in the dispute." Ladd, Expert Testimony, 5 Van L R 414, 418 (1952). [*Id.,* p 169.]

In striking Butcher's testimony, the trial judge reasoned that the testimony would not be helpful to the jury because it merely commented on the weight the jury should give Romesburg's testimony and the testimony was not based upon Butcher's independent analysis of the property. The judge also reasoned that the testimony invaded the province of the jury.

The thrust of Butcher's testimony was that, in his opinion, Romesburg's conclusions were logical and therefore credible. Given Romesburg's extensive testimony concerning his methodology, the jury was as capable as Butcher to evaluate the weight it should give Romesburg's testimony. The trial court did not abuse its discretion in striking Butcher's testimony.

IV

Defendant next contends that the trial court erred in ordering it to produce and furnish copies of Phillip Pierce's appraisals and in denying defendant's motion in limine to exclude Pierce's testimony. We disagree.

Error requiring reversal must be that of the trial court, and not error to which the aggrieved party contributed. *Harrigan v Ford Motor Co,* 159 Mich App 776, 786; 406 NW2d 917 (1987).

It is clear from the record that the parties stipulated that they would exchange appraisals and have the right to call experts, including Pierce, identified by the other party. Therefore, the trial court's factual finding that defendant had stipulated to the exchange of appraisals and the right to call the other party's expert as a witness was not clearly erroneous.

V

Defendant also contends that the trial court's refusal to instruct the jury that only persons having an interest in the property greater than a month-to-month tenancy are entitled to recover under the acts was prejudicial and resulted in error requiring reversal, because there was no testimony that Bercel had an interest greater than a month-to-month tenancy.

Although defendant is correct that MCL 253.59; MSA 9.1149 requires that in order to be compensated nonowners must have greater than a month-to-month tenancy in the property, in this case the instruction was unnecessary, because the evidence showed that Bercel was the sole owner of the Bercel property at the time of trial.

VI

Defendant also contends that the trial court erred in refusing to instruct the jury that damages must be apportioned between American and its land contract vendors. We disagree.

Under both acts, the county had the responsibility to institute judicial proceedings to determine the damages caused by the grade separation. See MCL 253.10; MSA 9.1110, MCL 253.11; MSA 9.1111, MCL 253.59; MSA 9.1149, and MCL 253.62; MSA 9.1151(2). Accordingly, the statutory scheme, MCL 253.61-253.63; MSA 9.1151(1)-1151(3), places the statutory duty on defendant, not plaintiffs, to publish notice of the institution of judicial proceedings to determine damages and to serve notice upon those having interests in the abutting properties. Because defendant never instituted judicial proceedings under the acts, it apparently never complied with the notice and service provisions.

MCL 253.16; MSA 9.1116 provides in pertinent part:

> If any property damaged shall be subject to a mortgage or lease, or to any lien or estate or interest otherwise arising, [the jury] shall apportion the compensation awarded among the parties interested therein as they shall deem just. In case the owner of any interest in any property damaged is unknown, they shall determine the compensation for damages to such interest and the same shall be paid into court for the benefit of such persons. They shall state separately the several amounts of damages by them awarded, and any apportionment of damages among different interests by them made.

The trial court refused to instruct the jury to apportion damages to American's land contract vendors, reasoning that the statute created a cause of action on behalf of plaintiffs and that defendant should have moved to join the vendors. The court also stated that American's damages would be paid to the court and applied so as to minimize the possibility that defendant would be subjected to double damages.

Here, the land contract vendors were neither parties to the suit nor unknown, and, therefore, the situation did not fit neatly within the statute. However, although defendant knew the identity of the parties, it never moved to join the vendors as plaintiffs. Because the statute only requires apportionment when the holder of an interest is a party or unknown, the trial court did not err in refusing to give the requested instruction. Moreover, because the trial court stated its intention to apply damages so as to preclude the possibility of defendant being subjected to double liability, even if the trial court erred in refusing to instruct with re-

gard to apportionment, our failure to vacate the verdict on this basis would not be inconsistent with substantial justice. *Niemi v Upper Peninsula Orthopedic Associates, Ltd,* 173 Mich App 326, 328-329; 433 NW2d 363 (1988).

## VII

Defendant also contends that the trial court's refusal to instruct the jury that it should not consider damages of inconvenience and loss of business resulted in error requiring reversal. We disagree.

After having reviewed the record, we conclude that the trial court did not err in refusing to give defendant's requested instruction with respect to damages, because the instruction given fairly and adequately presented the law. *Detroit v F L Lowrie Lumber & Finish Co,* 261 Mich 278, 281; 246 NW 51 (1933); *Wiegerink v Mitts & Merrill,* 182 Mich App 546, 548; 452 NW2d 872 (1990).

## VIII

Defendant also contends that the trial court's failure to instruct the jury that there is no vested or constitutional right to use the public streets for private business resulted in error requiring reversal. We disagree.

Because the requested instruction was not relevant to the facts of this case, the trial court correctly refused to instruct the jury that there was no vested or constitutional right to use public streets for business purposes.

## IX

Defendant also contends that the trial court's

refusal to instruct the jury that plaintiffs bore the burden of proving that the grade separation directly caused any and all damages resulted in error requiring reversal. Again, we disagree. The trial court adequately informed the jury that the damages must be caused by the change in grade.

X

Defendant also contends that the trial court erred in refusing to instruct the jury that it should not consider any evidence or damages resulting from impairment of access, limitations of egress and ingress, or changes in traffic patterns. We disagree.

As noted earlier, any interference with the use of the property, such as interference with access to and obscuring the view of the property, may be probative in determining the difference in value of the affected property. *Lowrie, supra; Gerson, supra; Grand Rapids v Kotvis,* 245 Mich 319, 321; 222 NW 740 (1929).

Defendant's reliance on *Biff's Grills, Inc v State Hwy Comm,* 75 Mich App 154; 254 NW2d 824 (1977), is misplaced. In that case, the plaintiff was trying to recover on a theory of inverse condemnation, alleging that construction of a median had made it more difficult for customers to reach its business. *Id.,* p 156. A cause of action does not have to meet the requirements of an unconstitutional "taking" in order to be compensable under the acts.

XI

Defendant also contends that the trial court's instruction that the jury could consider the more circuitous route, interference with light and air,

and decrease in business in valuing the property after the change of grade resulted in error requiring reversal. We disagree. This issue has been addressed in issues VII and X of this opinion and is without merit. *Lowrie, supra; Gerson, supra; Kotvis, supra.*

### XII

Defendant also contends that the trial court erred in refusing to direct a verdict in its favor because plaintiffs failed to show facts permitting recovery under either of the acts. We disagree.

Defendant argues that because Sixteen Mile Road was a county road located within the City of Sterling Heights, 1893 PA 92 did not apply to this case. Defendant also argues that because plaintiffs filed suit before the one-year time limit of 1925 PA 114, § 11, MCL 253.11; MSA 9.1111, because plaintiffs did not comply with the notice and service provisions of § 13, MCL 253.13; MSA 9.1113, and because Bercel did not possess an interest greater than a month-to-month tenancy, plaintiffs had no cause of action under 1925 PA 114. Defendant further contends that the acts did not create a cause of action on behalf of plaintiffs.

In deciding whether to grant a directed verdict motion, the trial court must view the testimony and all legitimate inferences from the testimony in the light most favorable to the nonmoving party to determine whether a prima facie case was established. *Hunt v Chad Enterprises, Inc,* 183 Mich App 59, 62; 454 NW2d 188 (1990). When the evidence could lead reasonable jurors to disagree, the court may not substitute its judgment for that of the jury. *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990).

A

Defendant's arguments that plaintiffs had no cause of action under the acts and did not comply with the notice and service requirements of 1925 PA 114, § 13 are addressed in issue VI of this opinion. Defendant's argument that Bercel had not shown that it possessed greater than a month-to-month tenancy is addressed in issue V.

B

Defendant's argument that plaintiffs have no cause of action because the affected portion of Sixteen Mile Road is a county road within the limits of the city, a situation not encompassed in 1893 PA 92, §§ 1 or 3, MCL 253.51, 253.53; MSA 9.1141, 9.1143, ignores the language of 1925 PA 114, MCL 253.59; MSA 9.1149, which states in pertinent part:

> The . . . county . . . or other agency, participating in the cost of grade separation as provided in this act, shall pay compensation to the owners . . . [of] the property abutting on that portion of said highway of which the grade is to be or has been changed, . . . for damages, if any, . . . and the public authority having jurisdiction over the street or highway involved . . . may settle or compromise such damages with the persons entitled thereto, or, if it is unable to effect such settlement or compromise, or deems it inexpedient so to do, shall institute judicial proceedings for the determination of such damages under the provisions of [1893 PA 92] . . . .

Thus, the 1925 act gives a county responsibility to pay damages for a grade separation of a road under its jurisdiction and authorizes it to bring proceedings under the 1893 act. Therefore, because

defendant could have begun proceedings under the 1893 act, plaintiffs likewise possessed a cause of action against defendant under that act.

C

Defendant's contention that plaintiffs' lawsuits were prematurely filed before the one-year period allowed the agency in § 11 of the 1925 act, MCL 253.61; MSA 9.1151(1), is without merit.

Here, the construction was completed in July 1982, and plaintiffs filed their complaints in March and May 1983. Defendant never began proceedings under the acts and only asserted the time limit as a bar to plaintiffs' actions after the one-year limit had passed.

Because defendant has shown no prejudice, its argument is without merit. Defendant could have raised the issue before the one-year compliance period had ended. Moreover, had defendant successfully moved to dismiss plaintiffs' case and had defendant brought the proceedings, the same issues would have been decided as were decided here. Further, in denying defendant's motion the trial court did not thwart the purpose of the compliance period provision, which is to allow construction to begin before the determination of damages and public necessity is made. *Mead v Michigan C R Co, supra,* 174 Mich 525-528.

The trial court did not err in denying defendant's motion for a directed verdict.

XIII

Defendant's final contention is that because Sterling owned the property which Bercel occupied without a lease at the time of the improvement and because Bercel and Sterling were two separate

corporations, the trial court erred in denying defendant's motion for a directed verdict with respect to Bercel, because Bercel had no interest in the property greater than a month-to-month tenancy. This issue has already been addressed in issue V of this opinion. As noted there, Bercel, the surviving corporation, succeeded to the interests of Sterling. Therefore, the trial court did not err in denying defendant's motion for a directed verdict on this basis.

Affirmed.