BERRYMAN v K MART CORPORATION

Docket No. 127823. Submitted January 16, 1992, at Detroit. Decided
   February 18, 1992, at 9:05 A.M.

Darlene and Robert Berryman brought an action in the Wayne
   Circuit Court against K mart Corporation, alleging negligence
   regarding injuries sustained by Darlene Berryman while shop-
   ping at a K mart store when she slipped and fell on a newly
   mopped floor and loss of consortium by Robert Berryman
   arising out of Darlene Berryman's injuries. The court, Samuel
   A. Turner, J., directed a verdict for K mart with respect to both
   claims. The Berrymans appealed.

   The Court of Appeals held:

   1. A prima facie case of negligence was established with
   sufficient evidence indicating that K mart owed a duty to
   Darlene Berryman, it breached that duty, the breach of duty
   was a proximate cause of her injuries, and she suffered dam-
   ages. Because such evidence was sufficient to enable reasonable
   jurors to reach different conclusions, the trial court erred in
   directing a verdict.

   2. The trial court also erred in directing a verdict with
   respect to the claim of loss of consortium solely on the basis
   that Robert Berryman failed to testify at trial. A claim of loss
   of consortium may be maintained, even if the claimant does not
   appear or testify at trial, as long as there exists sufficient
   evidence on the record to support the claim. Sufficient evidence
   was presented to enable reasonable jurors to conclude that
   Darlene Berryman's injuries had caused Robert Berryman to
   lose conjugal fellowship, companionship, services, and other
   incidents of his marriage.

   3. The trial court abused its discretion in refusing to allow a
   psychologist to testify as an expert for the Berrymans on the
   grounds that the proposed expert had not been admitted as an

REFERENCES

Am Jur 2d, Husband and Wife §§ 455, 456; Premises Liability
   §§ 499, 506.
Liability of proprietor of store, office, or similar business premises
   for fall on floor made slippery by washing or cleaning. 63 ALR2d
   694.

expert in any prior case and that the proposed expert had not viewed the scene of the accident. The proposed expert testified that he had been qualified as an expert in prior cases. MRE 703 provides that an expert's testimony may be based on facts perceived by or made known to the expert at or before a hearing.

Reversed and remanded for a new trial.

1. Negligence — Storekeepers — Premises Liability.

A storekeeper has a duty to provide reasonably safe aisles for customers and is liable for injury resulting from an unsafe condition caused by its active negligence or that of its employees or, if otherwise caused, where the condition is or should have been known to the storekeeper.

2. Negligence — Loss of Consortium — Failure of Claimant to Testify.

A person claiming loss of consortium is not required to appear or testify at trial and may support the claim with evidence other than testimony.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Gregory M. Janks* and *Barbara M. Robinson*), for the plaintiffs.

*Kevin F. Robbins,* for the defendant.

Before: Murphy, P.J., and Cavanagh and Connor, JJ.

Connor, J. Plaintiffs Darlene and Robert Berryman appeal from the trial court's grant of defendant's motion for a directed verdict. We reverse.

On March 8, 1985, plaintiff Darlene Berryman slipped and fell in defendant's Garden City store. After she fell, she noticed that the floor was wet and that the "wet streaky marks on the floor" were consistent with freshly mopped floors she had seen in the past. Two women, who had seen her fall, offered assistance. Mrs. Berryman failed to get the names of these women, and they had left by the time defendant's employees investigated the fall. As a result, the women did not testify at trial.

According to Mrs. Berryman, the women told her that they had seen someone mopping the floor where she had fallen immediately before the accident. However, at trial defendant successfully objected to Mrs. Berryman's testimony regarding the statements of the women who had come to her assistance, arguing that the statements constituted hearsay not falling within any exception. Defendant, in its answers to plaintiffs' interrogatories, which were introduced as exhibits at trial, admitted that its premises were maintained solely by its employees.

After regaining her composure, Mrs. Berryman sought out an employee of defendant to report her fall. According to Mrs. Berryman's testimony at trial, the employee told her that defendant's floors were mopped at various times during the day. The employee also told her that it was "likely" that the floor had been mopped before her fall, but that the employee did not know for certain. This employee did not testify at trial.

After three telephone calls, which took approximately one-half hour, a supervisor appeared and listened to Mrs. Berryman's account of the accident. When the two subsequently returned to the spot where she had fallen, the floor was dry.

In their suit, plaintiffs alleged that Mrs. Berryman suffered lumbar spine and cervical spine injuries as a direct and proximate result of defendant's negligence. Mr. Berryman claimed loss of consortium arising out of his wife's injuries.

At the conclusion of plaintiffs' proofs, the trial court granted defendant's motion for a directed verdict. First, the trial court ruled that defendant was entitled to a favorable verdict with regard to Mr. Berryman's claim for loss of consortium because insufficient evidence of damages was introduced as a result of his failure to testify. Second,

the trial court ruled that defendant was also entitled to a directed verdict with regard to Mrs. Berryman's claim of negligence because plaintiffs failed to establish that defendant had breached any duty. Plaintiffs appeal as of right, raising a number of issues.

Plaintiffs first contend that the trial court erred in granting defendant's motion for a directed verdict with regard to Mrs. Berryman's claim of negligence. We begin by noting that "[d]irected verdicts, particularly in negligence cases, are viewed with disfavor." *Vsetula v Whitmyer,* 187 Mich App 675, 679; 468 NW2d 53 (1991).

When ruling on a motion for a directed verdict, a trial court must consider the evidence presented at trial and all legitimate inferences that may be drawn from the evidence in a light most favorable to the nonmoving party to determine if a prima facie case was established. *Bercel Garages, Inc v Macomb Co Rd Comm,* 190 Mich App 73, 89; 475 NW2d 840 (1991); *Reisman v Regents of Wayne State University,* 188 Mich App 526, 538; 470 NW2d 678 (1991). Where the evidence is such that reasonable jurors could honestly have reached different conclusions, the trial court may not substitute its judgment for that of the jury and the motion must be denied. *Bercel Garages, supra* at 89; *Mourad v Automobile Club Ins Ass'n,* 186 Mich App 715, 721; 465 NW2d 395 (1991). In reviewing the decision of the trial court, this Court uses an identical standard to determine if the trial court erred. *Reisman, supra* at 538.

To establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach of its duty was a proximate cause of the plaintiff's injuries, and (4) the plaintiff

suffered damages. *Johnson v Bobbie's Party Store,* 189 Mich App 652, 659; 473 NW2d 796 (1991); *Nolan v Bronson,* 185 Mich App 163, 169; 460 NW2d 284 (1990). A prima facie case of negligence may be established by use of legitimate inferences, as long as sufficient evidence is introduced to take the inferences "out of the realm of conjecture." *Ritter v Meijer, Inc,* 128 Mich App 783, 786; 341 NW2d 220 (1983).

A storekeeper's liability for injuries caused on its premises is well established in this state.

> "It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if otherwise caused, where known to the storekeeper or is of such a character or has existed a sufficient length of time that he should have had knowledge of it." [*Serinto v Borman Food Stores,* 380 Mich 637, 640-641; 158 NW2d 485 (1968), quoting *Carpenter v Herpolsheimer's Co,* 278 Mich 697; 271 NW 575 (1937); emphasis deleted.]

See also *Andrews v K mart Corp,* 181 Mich App 666, 670-671; 450 NW2d 27 (1989); *McCune v Meijer, Inc,* 156 Mich App 561, 562; 402 NW2d 6 (1986). Neither party questions that defendant owed plaintiffs a duty to provide reasonably safe aisles under the strictures of *Serinto.* The dispute centers on whether the evidence introduced at trial was sufficient to establish a prima facie case of negligence, specifically whether defendant breached its duty to plaintiffs.

*Whitmore v Sears, Roebuck & Co,* 89 Mich App 3, 5; 279 NW2d 318 (1979), the case relied upon by defendant in the trial court and the trial court in its decision to grant defendant's motion for a

directed verdict, involved an oil spill in the parking lot of the defendant's store. The Court of Appeals found that the evidence presented by the plaintiff, which "established that there was an oily substance on Sears' parking lot at the spot where she fell," was insufficient to support an inference that the defendant's employees had caused the spot to be there or that the defendant had actual or constructive notice of the spot. *Id.* at 10. Accordingly, the Court of Appeals concluded that the trial court had erred in denying the defendant's motion for a directed verdict. *Id.* at 9-10.

The evidence in this case supporting an inference that defendant caused the condition that led to Mrs. Berryman's fall is much stronger. Mrs. Berryman testified that she had fallen on a wet spot on the floor within defendant's store. She also testified that she observed the floor after her fall and noted it was streaky, like floors she had mopped in the past, and that there were no signs or warnings that the floor was wet. Mrs. Berryman further testified that she later saw an employee of the defendant, near the rear of the store, with a mop and bucket. Finally, defendant admitted that its premises were maintained solely by its employees. A logical inference to be drawn from this testimony is that defendant's employees had mopped the floor on which Mrs. Berryman had fallen and that they had failed to post adequate warning signs.

Because the evidence leads to an inference that defendant created the condition that caused Mrs. Berryman's fall, proof of notice is unnecessary and the parties' arguments regarding that issue will not be addressed. *Williams v Borman's Foods, Inc,* 191 Mich App 320, 321; 477 NW2d 425 (1991).

Mrs. Berryman established that defendant owed her a duty, that defendant breached that duty by

creating a condition that was dangerous, that the condition created caused her injury, and that she suffered damages. Because the evidence was sufficient to enable reasonable jurors to reach different conclusions, we conclude that the trial court erred in .substituting its judgment for that of the jury and in granting defendant's motion. Accordingly, we reverse.

We also agree that the trial court erred in directing a verdict for defendant with regard to Mr. Berryman's claim for loss of consortium. The trial court granted defendant's motion for a directed verdict with regard to that claim after ruling that, because of Mr. Berryman's failure to testify, there was insufficient evidence to support his claim.

Loss of consortium includes loss of conjugal fellowship, companionship, services, and all other incidents of the marriage relationship. *Oldani v Lieberman,* 144 Mich App 642, 645; 375 NW2d 778 (1985). A claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury. *Moss v Pacquing,* 183 Mich App 574, 583; 455 NW2d 339 (1990), consideration of certified conflict declined 435 Mich 1204 (1990); *Oldani, supra* at 645. A party claiming damages arising from loss of consortium must prove those damages by a preponderance of the evidence. *Washington v Jones,* 386 Mich 466, 472; 192 NW2d 234 (1971). Although there are no cases in Michigan addressing the issue whether the spouse must testify to support a claim of loss of consortium, decisions from other jurisdictions do not impose such a requirement.

Proceeding from an earlier decision that held that a plaintiff need not appear in court or testify to support his cause of action, the Florida District Court of Appeals concluded that a wife's testimony

that "related at length, not only the extent of her own injuries, but, only for example, their adverse effect upon her temperament, her ability to work both outside and inside the home, and the couple's sexual relations was more than sufficient to demonstrate that her husband had sustained recoverable damages." *Wills v Snapper Creek Nursing Home, Inc,* 465 So 2d 562, 563-564 (Fla App, 1985), petition for review den 476 So 2d 675 (Fla, 1985). See also *Alter v Finesmith,* 214 So 2d 732, 737 (Fla App, 1968), cert den 225 So 2d 538 (Fla, 1969). *Wills* was cited with approval in two later decisions of the Florida courts. See *Figueredo v Keller Industries, Inc,* 583 So 2d 432 (Fla App, 1991) (holding that the trial court erred in affirming a zero verdict on a wife's claim of loss of consortium where, although she did not testify, "there was undisputed evidence that at least some damages . . . were sustained"); *Carnival Cruise Lines, Inc v Rosania,* 546 So 2d 736, 738 (Fla App, 1989) ("We also find no error in the failure of the husband to personally testify on the derivative action. There was other evidence that was sufficient to support this claim.").

Another recent decision is that of the Pennsylvania Superior Court in *Burns v Pepsi-Cola Metropolitan Bottling Co,* 353 Pa Super 571, 577-579; 510 A2d 810 (1986). The court concluded that there was "no requirement that the spouse seeking to recover for loss of consortium must testify to support such a claim if it is otherwise borne out by substantial evidence from other sources . . . ." *Id.* at 579. In an earlier decision referred to by the *Burns* court, the court had affirmed an award of $150,000 for loss of consortium to a woman whose husband had presented "compelling testimony as to the severe negative effects the accident" had caused and both the husband and the couple's

daughter testified regarding the "significant disruption" of the couple's marriage. *Thompson v Anthony Crane Rental, Inc,* 325 Pa Super 386, 400; 473 A2d 120 (1984).

Similarly, the Oklahoma Supreme Court has held that "the simple failure of a plaintiff in a loss or [sic] consortium action to testify is not, in and of itself, fatal to such action." *Middlebrook v Imler, Tenny & Kugler, M.D.'s, Inc,* 713 P2d 572, 586 (Okla, 1985). Because the court found "evidence of her loss of the services of her husband, which range from the impairment of conjugal fellowship to loss of the physical services of a husband and domestic handyman," it affirmed a jury verdict in the amount of $175,000 for the wife's loss of consortium. *Id.*

The Alaska Supreme Court, in *Rutherford v State,* 605 P2d 16, 25 (Alas, 1979), held that it was not "determinative" that the wife did not testify at trial. The court reasoned: "We see no reason why the competent testimony of the injured spouse or a third party cannot be used to support a consortium claim, though undoubtedly a claimant's direct testimony would be both more definitive and more persuasive." *Id.*

Finally, the Tennessee Court of Appeals held the defendants' claim that the plaintiff wife's failure to testify precluded her recovery on a claim of loss of consortium to be meritless, relying on the "proof as to the injuries and disabilities of her husband . . . ." *Swiney v Malone Freight Lines,* 545 SW2d 112, 117 (Tenn App, 1976).

Given the apparent absence of any authority to the contrary, see anno: *Excessiveness or adequacy of damages awarded for noneconomic loss caused by personal injury or death of spouse,* 61 ALR4th 309, 317 (accepting *Burns, supra,* as authority for

its conclusion that failure to testify "does not appear to be significant" for a claim of loss of consortium), we find the rationale underlying the decisions of the foreign courts to be equally persuasive in Michigan. Because a party does not have to appear to prosecute or defend a civil action, MCL 600.1430; MSA 27A.1430, we conclude that there is similarly no requirement that a party testify to establish his right to recovery. Accordingly, we find that a claim of loss of consortium may be maintained, even if the claimant does not appear or testify at trial, as long as there exists sufficient evidence on the record to support the claim.

Reviewing the record in this matter in a light most favorable to Mr. Berryman, there was sufficient evidence to establish that Mrs. Berryman's injuries had caused him to lose his wife's conjugal fellowship, companionship in activities both had formerly enjoyed, and his wife's assistance in caring for their home and children. Reasonable jurors could have found that sufficient proof had been presented to establish Mr. Berryman's claim of loss of consortium. Accordingly, we conclude that the trial court also erred in granting defendant's motion for a directed verdict with respect to this claim.

Given the necessity of remanding this matter for a new trial, we will also address some of the other issues that may again be contested.

First, plaintiffs argue that the trial court's refusal to allow their expert, Dr. Robert Pachella, to testify at trial constitutes an abuse of discretion. The trial court gave three reasons for not allowing Pachella to testify as an expert: Pachella had never examined a situation similar to the one before the trial court, he had never been previously admitted to testify as an expert before a

court, and he had not examined the scene of Mrs. Berryman's fall.

Under MRE 702, which governs the admissibility of expert testimony, the critical inquiry is whether expert testimony will aid the trier of fact in reaching its ultimate decision. *Bercel Garages, supra* at 83. Admission of expert testimony requires that (1) the witness be qualified as an expert, (2) the expert's proposed testimony "must serve to give the trier of fact a better understanding of the evidence or assist in determining a fact in issue," and (3) the witness' testimony "must be from a recognized discipline." *People v Beckley,* 434 Mich 691, 711; 456 NW2d 391 (1990) (opinion of BRICKLEY, J.), reh den sub nom *People v Badour,* 435 Mich 1243 (1990).

The decision to admit or exclude expert testimony is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Jack Loeks Theatres, Inc v City of Kentwood,* 189 Mich App 603, 611; 474 NW2d 140 (1991). In evidentiary rulings, an abuse of discretion will be found "only if an unprejudiced person, considering the facts on which the trial court acted, would say that there was no justification or excuse for the ruling made." *Gore v Rains & Block,* 189 Mich App 729, 737; 473 NW2d 813 (1991).

Dr. Pachella, plaintiff's proposed expert, held a Ph.D. from Johns Hopkins University in experimental psychology and noted his research and publication were in the fields of cognitive psychology, human-factors engineering, and human perception. His research involved normal human abilities in the context of performing routine tasks and the environments in which people lived and worked. Pachella had been engaged in the study of these areas for twenty-five years at the time of

trial. At trial, Pachella testified that he had served as an expert in "a number of cases" that involved people who had fallen, but could not recall a case that involved "this kind of store," meaning one of defendant's stores. However, Pachella testified that he had "looked at a number of other common circumstances that involve retail kinds of stores; of various kinds." Pachella also testified that, in preparation for trial, he had reviewed the depositions of Mrs. Berryman and two of defendant's employees.

On the basis of our review of the record, we conclude that the trial court abused its discretion in refusing to allow Pachella to testify as an expert for the reasons stated. The trial court's conclusions that Pachella "never had a situation" similar to the one in this matter and that he had never been admitted as an expert by another court were clearly erroneous. Pachella testified that he had examined cases involving retail stores and had testified in court, although not in regard to one of defendant's stores. Nor is Pachella's failure to view the scene of the accident sufficient to bar his testimony as an expert. Pursuant to MRE 703, an expert's testimony may be based on facts "perceived by or made known to him at or before the hearing." Pachella, in preparing for his testimony, had reviewed the depositions of Mrs. Berryman and two of defendant's employees to assist in his analysis of plaintiff's fall. There is no requirement that the expert actually examine the scene of the accident.

Plaintiffs raise two additional issues that we will discuss briefly. However, given the limitations of the record before us, we decline to resolve either issue definitively.

Plaintiffs contend on appeal that the trial court abused its discretion in finding that the statements

of the two women who came to her assistance were hearsay not within any exception. Plaintiffs argue that the statements are admissible as either present-sense impressions, under MRE 803(1), or excited utterances, under MRE 803(2). Plaintiffs' failure to move for the admission of the statements under MRE 803(1) would normally preclude this Court from addressing that argument on appeal, *Lowman v Karp,* 190 Mich App 448, 454; 476 NW2d 428 (1991). However, because the trial court will be confronted with the issue on remand, we will briefly address both claims for the benefit of the parties and the court below.

MRE 803(1) allows the admission of present-sense impressions, which are defined by that rule as statements "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Whether a statement occurs "immediately" after the event or condition described is necessarily a factual determination. *Johnson v White,* 430 Mich 47, 56-57; 420 NW2d 87 (1988); *Duke v American Olean Tile Co,* 155 Mich App 555, 570; 400 NW2d 677 (1986) ("the phrase 'immediately thereafter' is not synonymous with 'instantly thereafter'"). On the record before us, we are unwilling to determine whether the statements of the women described an event or condition that had occurred within the time frame required to render their statements sufficiently trustworthy to qualify as a hearsay exception.

MRE 803(2) allows the admission of statements that relate to a startling event and that were uttered while the declarant was under the stress of excitement caused by the startling event. To be admissible under MRE 803(2), the statement must arise out of an occasion sufficiently startling to produce nervous excitement and render the state-

ment spontaneous and unreflecting; it must be made while the declarant is still under the influence of the nervous excitement, before there is any time to contrive or misrepresent; and it must relate to the circumstances of the startling occasion that the declarant appears to have had an opportunity to observe. *People v Ellis,* 174 Mich App 139, 143; 436 NW2d 383 (1988); *Hewitt v Grand Trunk W R Co,* 123 Mich App 309, 319; 333 NW2d 264 (1983). Again, on the record before us, we are unwilling to determine whether the statements relate sufficiently to the circumstances of Mrs. Berryman's fall and whether they were spontaneous and uncontrived.

However, we note our disagreement with defendant's argument that the requirements of *People v Burton,* 433 Mich 268, 294; 445 NW2d 133 (1989), which held that admission of a statement as an excited utterance requires "independent proof of the startling events" that led to the statement, precludes plaintiffs from using the women's statements. Independent proof of Mrs. Berryman's fall and its alleged cause, a freshly mopped floor, was introduced through the testimony of Mrs. Berryman herself. Accordingly, *Burton* would not bar introduction of the statements as excited utterances.

Finally, plaintiffs assert that an adverse inference must be drawn against defendant regarding its failure to identify or produce the two women who came to Mrs. Berryman's aid and the employee to whom she first reported her fall. "[U]nder Michigan law, an adverse inference may be drawn against a party who fails to produce evidence within its control." *Grossheim v Associated Truck Lines, Inc,* 181 Mich App 712, 715; 450 NW2d 40 (1989). See also SJI2d 6.01. Regarding the two women, defendant did not exercise control

over them, because they were simply customers shopping in its store. Although we agree that an adverse inference could possibly be drawn against defendant because of its failure to produce its employee or to provide a reasonable excuse for its failure to do so, given the record before us, we decline to resolve the issue definitively.

We reverse the trial court's grant of defendant's motion for a directed verdict with respect to both Darlene Berryman's negligence claim and Robert Berryman's claim of loss of consortium and remand this matter for a new trial. We do not retain jurisdiction.

Reversed and remanded.