# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRY ANN SEVIC,

        Plaintiff-Appellant,

v

BOARD OF EDUCATION FOR LANSING
SCHOOL DISTRICT,

        Defendant-Appellee,

and

CHARLES CLARE KNICKERBOCKER,

        Defendant.

UNPUBLISHED
February 13, 2018

No. 334586
Ingham Circuit Court
LC No. 13-000535-NI

Before: RONAYNE KRAUSE, P.J., and FORT HOOD and O'BRIEN, JJ.

PER CURIAM.

In this auto accident case, plaintiff appeals as of right the trial court's final order of no cause of action, specifically challenging the trial court's decision denying her motion for directed verdict. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The auto accident giving rise to this case occurred on December 13, 2012. Plaintiff was driving an SUV on the freeway when she collided with a vehicle driven by Charles Knickerbocker and owned by defendant, the Board of Education for the Lansing School District.[1] At trial, the parties disputed who was at fault in causing the accident. At trial, plaintiff presented evidence that she suffered a partial hamstring tear and a labrum tear that caused long-term pain in her hip, lower back, and buttocks area. Plaintiff treated with several doctors and

---

[1] Although Charles Knickerbocker was named as a defendant below, he is not a party to this appeal. Therefore, we will refer to the Board of Education for the Lansing School District as defendant and will refer to Knickerbocker as defendant's employee.

received a series of physical therapy treatments, pain injections, ongoing pain medication, and ultimately a surgical repair of the labrum tear.

The evidence at trial indicated that plaintiff experienced some limitations with regard to her normal, pre-accident activities, such as housework, gardening, and walking the family dog. Plaintiff was also unable to resume some of her usual physical exercise activities. However, the evidence at trial also indicated that plaintiff was able to perform many of her normal activities after the auto accident, including housework, gardening, and walking the family dog. Plaintiff's husband testified that while he helped with the couple's five-acre garden more after the accident than he did before the accident, plaintiff was still able to get down on all fours to plant items and to pull weeds in the garden. Plaintiff's son testified that while plaintiff tried to still engage in her gardening activities, and that she attempted to do as much as she could, she could not garden as much, or for as long a period of time, as she could before the accident. Plaintiff's long-time friend also testified that, after the accident, plaintiff was able to garden minimally, but that plaintiff could not garden for long periods of time and she could no longer participate in day trips regarding gardening. Plaintiff herself testified that she continued to work in her garden from time to time, and that while she could no longer rake, shovel, or dig, she could still get down on her hands and knees to weed the garden.

Plaintiff's husband testified that plaintiff continued to serve as the principal cook for the household, even after the accident, and that plaintiff continued to do the family's laundry, with the exception of carrying laundry baskets. Plaintiff's husband also testified that plaintiff continued to walk the family dog after the accident but that she did so more slowly. Defendant's physiatrist, Dr. Brian Chodoroff, testified that he believed plaintiff could perform normal day-to-day activities and that she could pursue a majority of typical household tasks and her usual activities of daily living. Plaintiff's family physician, Dr. Amy Blaising-Wallace, testified that plaintiff continued to take daily walks after the accident and that those walks would be 30 to 45 minutes in duration. Plaintiff's treating physiatrist, Dr. Curt Winnie, testified that plaintiff did not need attendant care services and that she was able to perform routine household chores. Dr. Winnie also testified that plaintiff was walking about a mile most days. Plaintiff herself testified that she could still do things around the house but could not do the vacuuming. Plaintiff also admitted that at the time of her deposition, she was going on two-mile walks with her dog, 4 to 5 times per week. In addition, plaintiff presented evidence that she was not able to return to her seasonal gardening job at MSU after the accident. Defendant's physiatrist, Dr. Chodoroff, agreed that plaintiff could not return to the gardening job at MSU. However, he testified that he thought plaintiff could work at another job as long as she did not lift more than 20 pounds, did not do a great deal of bending and twisting, and did not sit for more than 30 minutes.

Plaintiff moved for a directed verdict at the close of proofs, arguing that there was no question of fact that plaintiff's accident-related injuries affected her general ability to lead her normal life and that reasonable minds could not differ on the evidence. Plaintiff therefore argued that the question of serious impairment should not be placed before the jury, contending that the question was a matter of law for the trial court to decide. The trial court denied plaintiff's motion for directed verdict, finding that a there was a factual dispute over the nature and extent of plaintiff's injuries. After the trial court denied plaintiff's motion for directed verdict, the jury found that both defendant's employee and plaintiff were negligent in causing the auto accident, that the negligence of both plaintiff and defendant's employee was a proximate cause of

plaintiff's injuries, that the percentage of negligence attributable to plaintiff was 40%, and that plaintiff did not suffer a serious impairment of body function.

## II. SERIOUS IMPAIRMENT OF BODY FUNCTION

On appeal, plaintiff argues that the trial court erred in denying her motion for a directed verdict. Plaintiff contends that MCL 500.3135(2)(a) required the trial court to decide the question of serious impairment of body function as a question of law and prohibited the trial court from submitting this question to the jury. Plaintiff further argues that if the trial court had decided whether plaintiff suffered a threshold injury, as a matter of law, it would have been compelled to determine that plaintiff met the serious impairment threshold. We disagree.

This Court reviews de novo a trial court's grant or denial of a motion for directed verdict. *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). "When evaluating a motion for directed verdict, the court must consider the evidence in the light most favorable to the nonmoving party, making all reasonable inferences in the nonmoving party's favor. A directed verdict is appropriate where reasonable minds could not differ on a factual question." *Id*. (quotation marks and citations omitted). Directed verdicts, "particularly in negligence cases, are viewed with disfavor." *Berryman v K Mart Corp*, 193 Mich App 88, 91; 483 NW2d 642 (1992) (quotation marks and citations omitted).

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). In this case, plaintiff alleges that the injuries she suffered in the auto accident qualify as a serious impairment of body function. MCL 500.3135(2)(a) provides the framework for determining whether the serious impairment standard is to be decided by the trial court or by the trier of fact. That statutory subsection provides:

(a) The issues of whether an injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(*i*) There is no factual dispute concerning the nature and extent of the person's injuries.

(*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . . [MCL 500.3135(2)(a)(*i*),(*ii*).]

Therefore, the preliminary question to be answered in every case where MCL 500.3135 is implicated is whether the serious impairment question belongs to the court or to the trier of fact:

The first step in interpreting MCL 500.3135 is to determine the proper role of a court in applying MCL 500.3135(1) and (7). The Legislature addressed this issue in the amended MCL 500.3135(2)(a) . . .

Under the plain language of the statute, the threshold question whether the person has suffered a serious impairment of body function should be determined *by the court as a matter of law as long as there is no factual dispute regarding the nature and extent of the person's injuries that is material to determining whether the threshold standards are met.* If there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide the issue as a matter of law. Notably, the disputed fact does not need to be outcome determinative in order to be material, but it should be significant or essential to the issue or matter at hand. [*McCormick v Carrier*, 487 Mich 180, 192-193; 795 NW2d 517 (2010) (quotation marks; citations and footnotes omitted; emphasis added).][2]

In this case, we agree with the trial court that the record evidence, viewed in the light most favorable to defendant, yielded factual disputes that precluded granting plaintiff's motion for a directed verdict. The evidence at trial confirmed that plaintiff experienced limitations with regard to her normal, pre-accident activities, such as housework, her physical exercise activity, gardening, and walking the family dog. Plaintiff also testified about her reliance on pain medication to alleviate her pain during the day and to help her sleep at night. Plaintiff also noted that she had not travelled as much following the auto accident. Plaintiff and her husband also testified about the emotional toll that her injuries had taken on her life. However, the evidence at trial also indicated that plaintiff was able to continue performing many of her normal activities after the auto accident, including housework, gardening, and walking the family dog. For example, plaintiff, her husband, and her son all testified that after the auto accident, with limitations, plaintiff continued to (1) tend an extensive garden, (2) take long walks multiple times per week, (3) serve as primary cook for the household, and (4) perform laundry and other housework.

Specifically, as noted above, defendant's physiatrist, Dr. Chodoroff, testified that he believed plaintiff could perform normal day-to-day activities and that she could pursue a majority of typical household tasks and her usual activities of daily living. Plaintiff's family physician, Dr. Wallace, testified that plaintiff continued to take daily walks after the accident and that those walks would be 30 to 45 minutes in duration. Plaintiff's treating physiatrist, Dr. Winnie, testified that plaintiff did not need attendant care services and that she was able to perform routine household chores. Dr. Winnie also testified that plaintiff was walking about a mile most days. Plaintiff herself testified that she could still "do things" around the house but could not do the vacuuming. Plaintiff also admitted that at the time of her deposition, she was

---

[2]Michigan law defines the term "serious impairment of body function" in MCL 500.3135(5) as "an objectively manifested impairment of an important body function that affects the person's ability to lead his or her normal life." Therefore, there are three components to the serious impairment definition found in MCL 500.3135(5): "(1) an objectively manifested impairment (2) of an important body function that (3) that affects the person's general ability to lead his or her normal life. *McCormick*, 487 Mich at 195.

going on two-mile walks with her dog, 4 to 5 times a week. In addition, plaintiff presented evidence that she was not able to return to her seasonal gardening job at MSU after the accident. Defendant's physiatrist, Dr. Chodoroff, agreed that plaintiff could not return to the gardening job at MSU. However, he testified that he thought plaintiff could work at another job as long as she did not lift more than 20 pounds, did not do a great deal of bending and twisting, and did not sit for more than 30 minutes.

As the trial court concluded, there were genuine disputes whether the objectively manifested injuries plaintiff incurred following the auto accident "continu[ed] to be *impairments*[ ]" as contemplated by MCL 500.3135. *Chouman*, 293 Mich App at 434 (emphasis in original.) Accordingly, the trial court correctly determined that questions of fact existed regarding the nature and extent of plaintiff's injuries. Therefore, the trial court properly declined to determine, as a matter of law pursuant to MCL 500.3135(2)(a), whether plaintiff suffered a serious impairment of body function and declined to grant plaintiff's motion for directed verdict.[3]

Affirmed.

/s/ Amy Ronayne Krause
/s/ Karen M. Fort Hood
/s/ Colleen A. O'Brien

---

[3] Given our resolution of this issue, we need not address plaintiff's remaining issue on appeal.