WESSELS v GARDEN WAY, INC

Docket No. 246518. Submitted August 4, 2004, at Lansing. Decided
September 28, 2004, at 9:00 A.M.

Frederick Wessels and Lucinda Osborne brought an action in the
Jackson Circuit Court against Garden Way, Inc. Wessels claimed
products liability and Osborne claimed loss of consortium. A jury
returned verdicts and awards of damages in favor of the plaintiffs.
The court, Edward J. Grant, J., separately applied to each award
the cap on noneconomic damages contained in MCL 600.2946a and
as adjusted for inflation on the date of the verdict rather than on
the date of the entry of judgment. The defendant appealed, and the
plaintiffs cross-appealed.

The Court of Appeals *held*:

1. The trial court correctly rejected the plaintiffs' argument
that the cap on noneconomic damages violates the rights to a jury
trial and to equal protection under the law, violates the separation
of powers doctrine, and constitutes illegal special legislation.
*Kenkel v Stanley Works*, 256 Mich App 548 (2003); *Phillips v
Mirac, Inc*, 470 Mich 415 (2004); *Zdrojewski v Murphy*, 254 Mich
App 50 (2002).

2. Although Osborne's derivative claim of loss of consortium is
a separate cause of action, damages awarded to her are subject to
the same cap on noneconomic damages set by MCL 600.2946a(1)
as Wessels's award for noneconomic loss. MCL 600.2945(f) defines
noneconomic loss for the purposes of product liability litigation to
include loss of consortium. The total amount of the plaintiffs'
claims is subject to one cap, and the cap is applied by the court only
after the jury has awarded the plaintiffs whatever amounts it
believes they have proven.

3. The trial court incorrectly decided that the statutory cap
applied as of the date of the verdicts rather than the later date of
the entry of the judgment. Because the annual adjustment of the
cap by the state treasurer is to account for the effects of inflation
and because a court speaks only through its written judgments or
orders, the date of entry of the judgment is the date on which the
cap must be applied by the court. Until the judgment was entered,
the verdict was unenforceable.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. PRODUCTS LIABILITY — NONECONOMIC LOSSES — STATUTORY CAP — CONSTITU-
TIONAL LAW.

The cap on noneconomic damages in a products liability case does not violate the rights to a jury trial or to equal protection under the law, does not violate the separation of powers doctrine, and does not constitute illegal special legislation (MCL 600.2946[1]).

2. PRODUCTS LIABILITY — NONECONOMIC LOSSES — STATUTORY CAP — LOSS OF
CONSORTIUM.

A derivative claim of loss of consortium in a products liability case is a separate cause of action, but damages awarded on the basis of that derivative claim are subject to and included within the same cap as damages awarded for the noneconomic loss of the injured party (MCL 600.2945[f], 600.2946a[1]).

3. PRODUCTS LIABILITY — NONECONOMIC LOSSES — STATUTORY CAP — INFLATION
ADJUSTMENT.

In a products liability case, after a jury has returned a verdict for the plaintiff, the court must apply the statutory cap of noneconomic losses as of the date the judgment is entered (MCL 600.2946a[1], [2]).

*Green, Green & Adams, P.C.* (by *Christine A. Green*), and *Mara E. Kent* for the plaintiffs.

*Vandeveer Garzia, P.C.* (by *Hal O. Carroll*), for the defendant.

Before: MURRAY, P.J., and MARKEY and O'CONNELL, JJ.

MURRAY, P.J. In this product liability action, defendant appeals the judgment entered on a jury verdict in favor of plaintiff Frederick Wessels on his product liability claim and plaintiff Lucinda Osborne on her loss of consortium claim. In its appeal, defendant argues that the statutory cap on noneconomic damages awarded in product liability cases applies to both of the plaintiffs' claims collectively, rather than each sepa-

rately as the trial court ruled. In plaintiffs' cross-appeal, they argue that the cap on noneconomic damages is unconstitutional. Additionally, plaintiffs argue that the judgment should have reflected the cap amount adjusted on the date the judgment was entered, as opposed to the day the jury rendered its verdict.

We hold that plaintiffs have not established that the statute violates any of their asserted constitutional rights, that plaintiff Osborne's loss of consortium claim is subject to the same cap as plaintiff Wessels's, and that the verdict is subject to the cap value at the time judgment is entered. We therefore reverse in part, affirm in part, and remand to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On July 19, 2001, the jury returned verdicts in favor of both plaintiffs. In posttrial proceedings, the trial court set forth the amounts awarded by the jury:

> The above-entitled cause is a product liability action and loss of consortium claim. The case was tried by jury during the week of July 16, 2001, and resulted in a jury verdict on July 19, 2001, in favor of the plaintiffs. The jury returned the following verdict: $50,000.00 for Plaintiff Fredrick Wessels for medical expenses to date; $400,000.00 for Frederick Wessels for non-economic damages to date; $30,000.00 per year for years 2001 through and including the year 2030 for non-economic damages for plaintiff Frederick Wessels; $150,000.00 awarded to plaintiff Lucinda Osborne for non-economic damages to date; and $10,000.00 per year for the years 2001 through and including the year 2030 for non-economic damages for plaintiff Lucinda Osborne ($300,000.00 total). Additionally, the jury found that the amount of fault attributable to plaintiff Frederick Wessels was 45%, and therefore pursuant to MCL 600.6303(3), all amounts awarded by the jury verdict are to be reduced by 45%. . . . The non-economic damages

awarded must also be reduced to the amount of limitation on non-economic damages as set forth by MCL 600.2946(a)[sic, 600.2946a].

The validity of the jury's verdict in favor of plaintiffs is not challenged on appeal, and consequently we need not discuss the facts underlying the lawsuit. Instead, the parties have challenged three separate pretrial and posttrial rulings, each related to the cap on noneconomic damages contained in MCL 600.2946a. In particular, during pretrial proceedings, the trial court rejected plaintiffs' constitutional challenge to the cap on noneconomic damages contained in MCL 600.2946a. Regarding the reduction of damages pursuant to the cap, the court ruled that the amount of the cap would be determined by what it was on the date the verdict was rendered (July 19, 2001), as opposed to when judgment was entered on the verdict (January 15, 2003). Additionally, the court held that the cap on noneconomic damages applied separately to each plaintiff's claim. From these decisions, the parties have appealed.

## II. ANALYSIS

### A. CONSTITUTIONAL ISSUES

We first address one of the issues raised in plaintiffs' cross-appeal: whether the cap on noneconomic damages violates several provisions of the Michigan and United States constitutions. Decisions regarding the constitutionality of a statute, presenting purely legal issues, are reviewed de novo. *Tolksdorf v Griffith*, 464 Mich 1, 5; 626 NW2d 163 (2001). The trial court rejected plaintiffs' challenges to the constitutionality of the statute, as do we.

Plaintiffs' argument is that the cap violates their rights to a jury trial, to the equal protection of the law,

is violative of the separation of powers, and is illegal special legislation. Recognizing that our Court recently rejected these same arguments regarding this exact statute in *Kenkel v Stanley Works,* 256 Mich App 548; 665 NW2d 490 (2003), plaintiffs ask us to invoke the conflict resolution provisions of MCR 7.215(J)(2). We decline to do so for several reasons. First, we agree with the reasoning and result in *Kenkel.* Second, our Supreme Court has recently upheld caps on noneconomic damages against similar constitutional challenges, *Phillips v Mirac, Inc,* 470 Mich 415; 685 NW2d 174 (2004), as did our Court in addressing similar constitutional challenges to the caps under the medical malpractice statute, *Zdrojewski v Murphy,* 254 Mich App 50; 657 NW2d 721 (2002). It is therefore abundantly clear that the cap set forth in MCL 600.2964a(1) does not violate plaintiffs' right to a jury trial, to the equal protection of the law, does not violate the separation of powers, and does not constitute illegal special legislation. See *Jenkins v Patel (On Remand),* 263 Mich App 508; 688 NW2d 543 (2004), in which our Court, on the basis of the precedent of *Zdrojewski* and *Phillips,* rejected the arguments that MCL 600.1483 violated the right to a jury trial, the separation of powers, and equal protection guarantees. As such, and for the reasons set forth in *Kenkel* and *Phillips,* we reject plaintiffs' argument to the contrary.

We now turn to two interesting issues of statutory construction, both of which appear to be issues of first impression.

### B. STATUTORY ISSUES

In reviewing the following issues involving the application and meaning of statutes, we must first examine the words actually contained in each statute, for "[t]hat

language is the best indicator of the Legislature's intent." *Kreiner v Fischer,* 471 Mich 109, 129; 683 NW2d 611 (2004). *Grossman v Brown,* 470 Mich 593, 598; 685 NW2d 198 (2004), recently reiterated how this Court is to read statutory language:

> Statutory language is read according to its ordinary and generally accepted meaning. If the statute's language is plain and unambiguous, we assume the Legislature intended its plain meaning; therefore, we enforce the statute as written and follow the plain meaning of the statutory language. *Tryc v Michigan Veterans' Facility,* 451 Mich 129, 135-136; 545 NW2d 642 (1996).

### 1. ARE PLAINTIFF OSBORNE'S DAMAGES SUBJECT TO A SEPARATE CAP?

Defendant argued below, and continues to argue on appeal, that under the plain and unambiguous language of MCL 600.2946a(1) and MCL 600.2945(f), the cap applies to the combined noneconomic damages awarded to both plaintiffs. Plaintiffs, on the other hand, successfully argued to the trial court that each plaintiff's noneconomic damage award was subject to a separate cap. In agreeing with plaintiffs on this point, the trial court held that, because plaintiff Osborne's loss of consortium claim was a distinct cause of action and because the Legislature did not utilize the same specific language in this statute as it did under the medical-malpractice cap statute, her award was subject to its own cap under the statute:

> *Lickfeldt v Dept of Corrections,* 247 Mich App 299; 636 NW2d 272 (2001)[,] indicates that where the Legislature deliberately chooses to use different phraseology, it is presumed that it intends a different result. The Court is satisfied that the wording of the statute which indicates that the cap applies to "an action for product liability" applies to each separate action and that in this case the

consortium claim is a separate and distinct cause of action which is entitled to its own separate cap. The Court therefore finds that each Plaintiff is entitled to have a separate cap applied to the non-economic damages awarded thereto by the jury and that the amounts awarded should not be combined and one cap applied.

As is evident from the above, the trial court's decision was premised on two factors: (1) that a loss of consortium claim is a separate cause of action and (2) that the cap on noneconomic damages for medical malpractice claims, MCL 600.1483(1), was more precise in limiting the cap to all plaintiffs' claims than was the statute at issue, thus evidencing legislative intent not to have a single cap for the total noneconomic damages awarded in a product liability case.

There is no doubt that loss of consortium is a separate cause of action, for that has been the law in Michigan since at least 1960. See, e.g., *Eide v Kelsey-Hayes Co*, 431 Mich 26, 30; 427 NW2d 488 (1988) ("loss of consortium is a separate cause of action"); *Montgomery v Stephan*, 359 Mich 33, 49; 101 NW2d 227 (1960); *Berryman v K mart Corp*, 193 Mich App 88, 94-95; 483 NW2d 642 (1992); *Milnikel v Mercy-Mem Med Ctr, Inc*, 183 Mich App 221, 223; 454 NW2d 132 (1989) ("Michigan has long recognized a cause of action for loss of consortium in favor of spouses."). As the *Berryman* Court stated, however, "[a] claim of loss of consortium is derivative and recovery is contingent upon the injured spouse's recovery of damages for the injury." *Berryman, supra* at 94. But concluding that there exists a separate cause of action for the derivative claim of loss of consortium does not answer the question presented, for the language of the statutes determines how the cap is to be applied. We, therefore, turn to MCL 600.2946a(1) and MCL 600.2945(f).

MCL 600.2946a(1) provides, in pertinent part, as follows:

> In an action for product liability, the *total amount of damages for noneconomic loss* shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00. [Emphasis added.]

The emphasized words "total amount of damages for noneconomic loss" are dispositive of this issue. And, for two reasons, we conclude that a plain reading of this phrase leads to the unavoidable conclusion that damages for noneconomic loss awarded on plaintiff Osborne's derivative claim for loss of consortium are subject to the same cap as plaintiff Wessels's award of noneconomic losses.

First, MCL 600.2946a(1) states that the "total" amount of noneconomic losses are capped at $280,000. "Total" is not defined by the Legislature, so to obtain the plain meaning of the word, we turn to a dictionary. *Corley v Detroit Bd of Ed,* 470 Mich 274, 279; 681 NW2d 342 (2004). According to the *Random House Webster's College Dictionary* (rev ed, 1988), "total" means "the total amount; sum; aggregate." Thus, to determine the "total" amount of noneconomic losses, damages awarded by the jury for those losses must be aggregated.

Second, "noneconomic loss" was defined by the Legislature. Specifically, MCL 600.2945(f) defines "noneconomic loss" for purposes of product liability cases to mean, inter alia, "loss of consortium."[1] Through this

---

[1] "Noneconomic loss" also includes any damages suffered by the person actually injured by the product, including "any type of pain, suffering . . . physical impairment [and] disfigurement . . . ." *Id.*

nonexhaustive list, the Legislature has included within "noneconomic loss" the damages that could be recovered through any spouses' derivative claim for loss of consortium. In other words, through the plain language of MCL 600.2945(f), the Legislature has recognized that the spouse of the main plaintiff may also seek to recover on a derivative claim for loss of consortium, and that these damages are to be included within the "noneconomic losses" capped by MCL 600.2946a(1).

Reading together the plain language of these two statutory sections, we hold that the *total amount* of damages awarded in this case for noneconomic losses, which specifically includes any damages for loss of consortium, that can be recovered is $280,000, as adjusted. In other words, the statute requires that all damages awarded for noneconomic losses be added together for a single total that is then subject to the trial court's application of the statutory cap of $280,000, as annually adjusted. MCL 600.2946a(2). See, also, *Jenkins v Patel,* 471 Mich 158, 171-172; 684 NW2d 346 (2004), in which the Court noted that statutory caps are applied by the court only after the jury awards the plaintiffs whatever amounts it believes they have proven.

Because the text of the statute is clear and unambiguous, we will not attempt to *interpret* the statute by considering how the Legislature worded caps in other statutes. *American Alternative Ins Co, Inc v York,* 470 Mich 28, 30; 679 NW2d 306 (2004). We must keep our focus on the words actually contained in the statute, as opposed to what is not, but possibly could have been, written into the statute. *Neal v Wilkes,* 470 Mich 661, 665; 685 NW2d 648 (2004) ("the language of the statute is the best source for determining legislative intent"); *Donajkowski v Alpena Power Co,* 460 Mich 243, 261;

596 NW2d 574 (1999) ("[S]ound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words,* not its silence." [Emphasis in original.]) Just because the Legislature utilized different, and arguably more precise, language in another statute, does not mean that the clear but different language used in these statutes means something substantively different. *In re Marin,* 198 Mich App 560, 563; 499 NW2d 400 (1993). As a result, we hold that plaintiffs' total award of noneconomic losses was subject to the statutory cap of $280,000, as adjusted. The trial court's decision to the contrary was in error. [2]

### 2. SHOULD THE JUDGMENT REFLECT THE CAP AT THE TIME OF VERDICT OR JUDGMENT?

The final issue raised is plaintiffs' challenge to the trial court's holding that the amount of the cap is determined at the time the verdict was rendered as opposed to when judgment on the verdict was entered. The issue arises because after the jury verdict was rendered on July 19, 2001, defendant filed for bankruptcy.[3] Eventually, the bankruptcy court allowed the proceedings below to continue, and a judgment was entered on January 15, 2003. In the meantime, how-

---

[2] Although the plain language of these statutes provides a clear answer to this issue, we note that the Maryland Court of Appeals decided this same issue, under virtually identical statutory language. In Maryland, the Legislature placed a cap on noneconomic damages awarded in personal injury cases, and its definition of "noneconomic damages" included "loss of consortium." Maryland Code Cts & Jud Pro 11-108(a)(1). In *Oaks v Connors,* 339 Md 24; 660 A2d 423 (1995), the Court held that this specific inclusion of loss of consortium within the definition of "noneconomic damages" required that damages awarded for loss of consortium be included within the overall cap. *Id.* at 36.

[3] There is no suggestion that defendant filed for bankruptcy in order to avoid the verdict.

ever, there were two annual adjustments to the cap amount between the verdict and judgment. MCL 600.2946a(1).

The trial court, noting that this was an issue of first impression, held that the cap on the date of the verdict would control:

> The Court is satisfied that the liability cap should be applied as of the date of the decision of the jury, which in this case is July 19, 2001, and thus the cap that applies in this cause is that in effect for the year 2001, which appears to be the amount of $340,500.00, based upon Exhibit A attached to Defendant Garden Way, Inc.'s Response to Plaintiff's Reply Brief. The use of the date of the verdict to determine the liability cap, the Court is satisfied, protects both parties from any subsequent delay.

We turn first to the language of the statute. *Neal, supra.* As noted earlier, MCL 600.2946a(1) provides that at the end of each calendar year, the state treasurer shall adjust the cap limitations to equal the cap contained in MCL 600.1483. MCL 600.2946a(2) then provides that "[t]he court shall adjust an award of noneconomic loss to conform to the" cap limitations. Although the statute directs the court to make the necessary cap adjustment, it does not indicate which cap amount would apply under these circumstances.

For several reasons, we believe the trial court erred in concluding that the cap amount at the time the verdict was rendered is to be utilized in determining the amount contained in the judgment, regardless of when a judgment is actually entered. Recognizing that the statute does not specifically address this precise issue, the general language and purpose of the statute establishes several overriding principles that, when read together, provide us with the answer to the question.

First, it is evident that the Legislature determined the acceptable maximum amount of noneconomic damages to be $280,000. MCL 600.2946a(1). It is likewise clearly apparent that the Legislature protected that cap amount from the effects of inflation by requiring the state treasurer to annually adjust the cap "to reflect the cumulative annual percentage change in the consumer price index." MCL 600.1483(4); MCL 600.2496a(1).[4] Finally, the Legislature has directed that it is the court that is to conform the verdict to the applicable cap amount. MCL 600.2946a(2). As the *Jenkins* Court noted, under this statute " ' "[o]nce the jury has reached its verdict, the trial judge merely enters a judgment on the verdict that is consistent with the law." ' " *Jenkins*, 471 Mich 173, quoting *Zdrojewski, supra* at 76-77, in turn quoting *Phillips v Mirac, Inc,* 251 Mich App 586, 594; 651 NW2d 437 (2002), aff'd 470 Mich 415; 685 NW2d 714 (2004).

Second, it is well settled that courts can only act through their written judgments or orders. *Stackhouse v Stackhouse,* 193 Mich App 437, 439-440; 484 NW2d 723 (1992), quoting *Tiedman v Tiedman,* 400 Mich 571, 576-577; 255 NW2d 632 (1977). Consistently with this time-honored rule, we have held that the purpose of the judgment is to reflect the verdict in writing, which among other things provides a mechanism to enforce the verdict rendered by the jury. *Heinz v Chicago Rd Investment Co,* 216 Mich App 289, 298; 549 NW2d 47 (1996).

---

[4] The consumer price index (CPI) is "[a]n index of prices used to measure the change in the cost of basic goods and services in comparison with a fixed base period." *American Heritage Dictionary* (2d college ed, 1985). Percentage changes in the CPI are often used to adjust figures for inflation over time. See, e.g., *Attorney General v Pub Service Comm #1,* 170 Mich App 113, 115; 427 NW2d 561 (1988).

In light of the foregoing, we conclude that the Legislature intended courts to apply the caps to the verdict, and courts can only do so by entry of a written judgment. It is also clear that the cap is to be annually modified consistently with changes in the CPI to protect the cap amount from inflationary increases. Thus, although the jury in this case rendered its verdict in 2001, the court did not apply the cap through a judgment until 2003. Before that time, the verdict was unenforceable by plaintiffs, and their verdict was to be protected from a decrease in value until the judgment and cap were applied and enforced through entry of the judgment.[5]

### III. CONCLUSION

Based on the foregoing, we affirm the trial court's decision that MCL 600.2946a does not violate plaintiffs' constitutional right to the equal protection of the law, to due process of law, or to a jury trial. We also affirm the trial court's ruling that the statute neither violates the separation of powers doctrine, nor does it constitute illegal special legislation. We reverse the trial court's conclusion that plaintiff Osborne's damage award was subject to a separate cap and reverse the trial court's conclusion that the verdict is subject to the cap amount on July 19, 2001, the date the verdict was rendered. We remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[5] We recognize defendant's argument, and the trial court's conclusion, that this rule could be subject to abuse by those who seek to extend the time for entry of judgment in order to reap the benefit of a subsequent annual adjustment. However, we believe trial court's can adequately guard against such actions through sanction provisions, MCR 2.114. Additionally, our duty is to objectively determine the answer to this question by best effectuating legislative intent.

MARKEY, J., concurred.

O'CONNELL, J. (*concurring.*) I concur with the majority.

I write separately to state that loss of consortium is not a separate, independent cause of action. Loss of consortium is a derivative cause of action. Only one injury occurs and, therefore, the total damages relate to the one injury. Loss of consortium, physical impairment, disfigurement, mental anguish, emotional distress, humiliation, and other nonpecuniary losses all relate to a single injury and, therefore, are not independent, separate causes of action.