### KIK v SBRACCIA

Docket No. 256419. Submitted October 4, 2005, at Marquette. Decided November 15, 2005, at 9:00 a.m. Vacated in part by order entered December 9, 2005. 268 Mich App 801.

Rebecca and Robert Kik, individually and as personal corepresentatives of the estate of their deceased infant daughter, Sharon Kik, brought an action in the Chippewa Circuit Court against John-Christopher Sbraccia, Kinross Charter Township EMS, and Kinross Charter Township after the decedent was prematurely born and died on the day of an accident in which a township EMS ambulance being driven by township EMS employee Sbraccia overturned while it was transporting a pregnant Rebecca Kik. Among the damages sought by the plaintiffs were damages for their loss of society and companionship with their deceased daughter and damages for Robert Kik's loss of consortium with Rebecca Kik. The defendants moved for partial summary disposition, contending that the claims for loss of society and companionship and for loss of consortium are barred by governmental immunity. The court, Nicholas J. Lambros, J., denied the motion. The defendants appealed.

The Court of Appeals *held*:

1. The circuit court correctly denied partial summary disposition for Sbraccia. The plaintiffs alleged gross negligence on the part of Sbraccia. *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274 (2005), which held that damages for loss of consortium are not recoverable in an action brought under the motor vehicle exception to governmental immunity, does not apply to the plaintiff's gross negligence claim against Sbraccia, which may include claims for loss of consortium and loss of society and companionship.

2. The circuit court correctly denied partial summary disposition for the township EMS and the township with respect to the plaintiffs' claim for loss of society and companionship. Assuming that *Wesche* correctly determined that recovery for loss of society and companionship is barred in actions brought under the motor vehicle exception for governmental immunity where the injured person did not die, *Wesche* does not apply to wrongful death cases.

Where the injured person dies as a result of the injuries sustained in the motor vehicle accident and the case becomes one brought under the wrongful death act, the full range of damages provided under the wrongful death act, including damages for loss of society and companionship, are not limited by the provisions of the governmental tort liability act that established the government's liability for bodily injury and property damage resulting from a motor vehicle accident.

3. MCR 7.215(J) constrains this panel to follow *Wesche's* holding that damages for loss of consortium are not recoverable in an action brought under the motor vehicle exception to governmental immunity. *Wesche* confuses the concepts of liability and damages. The motor vehicle exception concerns liability for bodily injury or property damage caused by the negligent operation of a government-owned motor vehicle, but does not limit or otherwise establish the types of damages that are recoverable from the government when liability is established. Once liability for bodily injury is established, a plaintiff may recover whatever damages arise from the injury, including damages for loss of consortium. Were the panel not constrained to follow *Wesche*, it would hold that damages for loss of consortium are recoverable in personal injury actions brought under the motor vehicle exception. On remand, the circuit court is to enter an order granting summary disposition for the township EMS and the township on the claim for loss of consortium.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES — GROSS NEGLI-GENCE — DAMAGES — LOSS OF CONSORTIUM — LOSS OF SOCIETY AND COMPANIONSHIP.

A governmental employee whose gross negligence while acting in the course of employment causes personal injury does not enjoy governmental immunity from tort liability and may be subject to liability for loss of consortium or loss of society and companionship arising from the injury caused (MCL 691.1407[2]).

2. GOVERNMENTAL IMMUNITY — MOTOR VEHICLE EXCEPTION — WRONGFUL DEATH — DAMAGES — LOSS OF SOCIETY AND COMPANIONSHIP.

Damages for loss of society and companionship are recoverable in a wrongful death action brought under the motor vehicle exception to governmental immunity from tort liability (MCL 600.2922[6], 691.1405).

*Petrucelli & Petrucelli, P.C.* (by *Jonny L. Waara*), for the plaintiff.

*Smith Haughey Rice & Roegge* (by *William L. Henn*) for the defendants.

Before: O'CONNELL, P.J., and SAWYER and MURPHY, JJ.

SAWYER, J. We are asked in this case to consider whether damages for loss of society and companionship (and similar claims) are available in actions limited by the motor vehicle and gross negligence exceptions to governmental immunity,[1] generally and also specifically in the context of wrongful death actions. Despite a recent decision of this Court holding that such damages are not recoverable under the motor vehicle exception, we conclude that, because that decision is not applicable to wrongful death cases, such damages are recoverable when arising from a wrongful death claim. Further, we conclude that such damages are recoverable under the gross negligence exception, an issue not considered in this Court's earlier opinion. Finally, the earlier opinion does control the issue whether such damages are recoverable in a personal injury claim. While we are bound by that decision and apply it in the case at bar, we do so only because we are required to do so and, if we were free to decide the issue ourselves, we would reach a different result.

Plaintiff Rebecca Kik, then pregnant with Sharon Kik, was being transported to Lansing from Sault Ste. Marie in an ambulance owned and operated by defendants Kinross Charter Township and Kinross Charter Township EMS and driven by defendant John-Christopher Sbraccia. While transporting Mrs. Kik, Sbraccia lost control of the ambulance, which over-

---

[1] MCL 691.1405 and 691.1407(2)(c).

turned in a ditch. Thereafter, Mrs. Kik went into labor, prematurely giving birth to Sharon, who died the same day. Plaintiffs Rebecca and Robert Kik allege that the premature delivery and death of their baby was the result of the injuries sustained in the ambulance accident.[2]

Defendants argue that the trial court erred by denying their motion for partial summary disposition regarding plaintiffs' derivative claims for loss of consortium and the like[3] because those claims were barred by governmental immunity. We disagree.

We review de novo a trial court's ruling on a motion for summary disposition.[4] A motion under MCR 2.116(C)(7) "tests whether a claim is barred because of

---

[2] We do note that it is less than completely clear to us that Sharon was, in fact, born alive and thereafter died. This does seem to be the implication of the wording in the complaint, as well as the fact that the infant's estate is a party to this action. But we could find nothing in either the complaint or plaintiffs' brief that clearly states that the child was born alive and how long the infant lived after birth. Our confusion arises because defendants consistently refer to Sharon as having been stillborn, indicating that the child was not born alive. The trial court's opinion adds to the confusion because it refers both to the death of plaintiffs' "unborn daughter" and to the "deceased infant," the former suggesting that Sharon was stillborn and the latter suggesting that she was born alive.

Because this is styled as a claim under the wrongful death act, Sharon's estate is a named party, and because of the procedural posture of this case, we shall interpret the complaint as alleging that Sharon was born alive and our analysis is based on that fact. If, however, there is a genuine dispute about whether the child was stillborn or born alive, this opinion should not be read as intending to make any resolution of that issue.

[3] While we refer to claims for loss of society and companionship and for loss of consortium in this opinion, plaintiffs' complaint actually includes claims for similar "non-physical" injuries such as conscious pain and suffering, severe mental disturbance, and the like. Although our opinion only specifically refers to the loss of consortium and the loss of society and companionship, we consider these other similar claims to be included in our discussion as well.

[4] *Dampier v Wayne Co*, 233 Mich App 714, 720; 592 NW2d 809 (1999).

immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties."[5] In making this determination, well-pleaded allegations are accepted as true and construed in favor of the nonmoving party.[6] Further, this case presents questions of statutory construction that are reviewed de novo.[7]

MCL 691.1407(1) provides, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." A number of exceptions to this broad grant of immunity are recognized by statute, including MCL 691.1405, the motor vehicle exception to governmental immunity,[8] which provides:

> .  Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in [MCL 257.1 to 257.923].

Similarly, an individual employee acting on behalf of his or her governmental employer "is immune from tort liability for an injury to a person"[9] caused by the employee while in the course of employment, provided that the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."[10]

---

[5] *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992).

[6] *Dampier, supra* at 720.

[7] *Cruz v State Farm Mut Automobile Ins Co*, 466 Mich 588, 594; 648 NW2d 591 (2002).

[8] This is the only exception to governmental immunity under which plaintiffs claim that the township defendants are liable.

[9] MCL 691.1407(2).

[10] MCL 691.1407(2)(c).

Our analysis of this case would seemingly be rendered easy by our decision in *Wesche v Mecosta Co Rd Comm*,[11] which was decided after the filing of the parties' briefs in this case. *Wesche* held that a wife's claim for loss of consortium that was based on her husband being physically injured in a motor vehicle accident was outside the scope of the motor vehicle exception to governmental immunity under MCL 691.1405 because loss of consortium claims did "not encompass bodily injury or property damage, but other damages deriving from the spouse's injury."[12] But we do not find our task to be so easy because we do not believe that *Wesche* is even applicable to two of the three categories of "loss of consortium" types of claims present here. And while *Wesche* does control the third category, we are not convinced that *Wesche* was correctly decided and follow it only because we are obligated to do so.

I

The first category of claims that we analyze is those against the individual defendant, John-Christopher Sbraccia. The rationale behind the *Wesche* decision, and defendants' argument in this case, is that recovery under the motor vehicle exception is limited to damages for bodily injury and property damage and that loss of consortium type claims are neither bodily injury nor property damage, and, therefore, that the government remains immune from claims of loss of consortium.[13] But, even assuming that *Wesche* and defendants are correct on this point, this does not apply here because Sbraccia's liability is not premised on the motor vehicle

---

[11] 267 Mich App 274; 705 NW2d 136 (2005).

[12] *Id.* at 279.

[13] *Id.* at 279.

exception, but on the limitations of the immunity granted to individuals under MCL 691.1407(2)(c). That statute provides that there is no individual immunity for acts of gross negligence without regard to the nature of injuries inflicted. Thus, the argument advanced in *Wesche*, that the motor vehicle exception to immunity only grants an exception for bodily injury or property damage, is simply inapplicable to claims against individuals because the individual immunity statute provides that there is no immunity at all if the employee engaged in grossly negligent conduct.

Defendants additionally argue that it would be non-sensical to hold an individual governmental employee liable where the governmental entity itself is protected by immunity, relying on the decisions in *Reese v Wayne Co*[14] and *Rose v Mackie*.[15] Accepting for the moment defendants' premise that the governmental entity itself is immune, we disagree with defendants' conclusion because neither *Reese* nor *Mackie* is applicable here. First, *Reese* does not stand for the proposition that a governmental employee is immune if the governmental entity is immune. Rather, *Reese* concluded that if the governmental entity, Wayne County, had no duty to remove a natural accumulation of ice and snow, then it follows that its employee had no such duty either. Thus, while the issue of immunity was present in *Reese*, the resolution of the issue of liability of the individual employee involved a question of duty, not immunity.[16] As for *Rose*, it involved an accident that occurred in January 1964.[17] The governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, was added by 1964 PA

---

[14] 193 Mich App 215; 483 NW2d 671 (1992).

[15] 22 Mich App 463; 177 NW2d 633 (1970).

[16] *Reese, supra* at 219.

[17] *Rose, supra* at 464.

170, effective July 1, 1965. Therefore, *Rose* is of little value in determining a case that arose after July 1, 1965.

The Legislature set forth when a governmental entity is immune and when it is liable in tort. Similarly, the Legislature set forth when individual governmental employees are immune and when they are liable in tort. The Legislature chose to use different standards to determine the immunity of the governmental entities and the governmental employee. Such a choice may have the effect in certain cases that the employee may not be immune when the governmental employer is immune. The Legislature could have avoided such a situation by providing in MCL 691.1407(2) that an individual employee is immune whenever the governmental entity is immune, but it did not. Whether it makes sense to hold the individual employee liable in a situation in which the governmental entity itself is immune is a question to be addressed by the Legislature, not this Court. The Legislature presumably had a reason to treat governmental employees and governmental entities differently, and it would be presumptuous of us to void that legislative determination.

For these reasons, we conclude that claims against an individual governmental employee, such as Sbraccia, may include loss of consortium type claims. Accordingly, we affirm the trial court's denial of summary disposition with respect to Sbraccia.

II

This then leads us to the question whether the governmental entity itself may be liable for loss of consortium type claims in actions controlled by MCL 691.1405, the motor vehicle exception to governmental immunity. In applying the decision in *Wesche*, we draw

a distinction between those claims having their roots in a wrongful death action and those claims having their roots in a personal injury not involving death. In this part, we address the applicability of *Wesche* to wrongful death actions and analyze the claims of Mr. and Mrs. Kik for the loss of society and companionship of their daughter occasioned by her death. For the purposes of the analysis in this part only, we shall assume that *Wesche* was correctly decided as applied to cases not involving wrongful death.

The basis for the trial court's decision, as well as plaintiffs' argument on appeal, is the Supreme Court's decision in *Endykiewicz v State Hwy Comm*.[18] In *Endykiewicz*, damages for the loss of a decedent's companionship and society were recoverable in view of the highway exception to governmental immunity,[19] "which appears to restrict governmental tort liability for highway defects to bodily injury and property damage suffered by an injured person."[20] As it existed at the time of the *Endykiewicz* decision, MCL 691.1402(1) provided:

> Any person sustaining bodily injury or damage to his property by reason of failure of any governmental agency to keep any highway under its jurisdiction in reasonable repair, and in condition reasonably safe and fit for travel, may recover the damages suffered by him from such governmental agency.

The language of the highway exception is slightly different from the language of the motor vehicle exception, and the argument advanced by the defendant in *Endykiewicz* is also somewhat different from that of defendants in this case. Specifically, the primary argument in *Endykiewicz* is that, under the highway excep-

---

[18] 414 Mich 377; 324 NW2d 755 (1982).

[19] MCL 691.1402.

[20] *Endykiewicz, supra* at 381-382.

tion, only the person suffering the bodily injury or property damage may recover damages and, because the person who suffers the loss of society and companionship is not the person who suffered the bodily injury, the person who suffered only the loss of society and companionship may not recover damages. The Court rejected this argument in light of the wrongful death act.[21]

*Endykiewicz*[22] described the relationship between the immunity statute and the wrongful death act as follows:

> Although some of the damages permitted for wrongful death are not, in one sense of the phrase, damages suffered by the person who actually was injured (the decedent), they are damages "suffered" or sustained by the individuals for whose benefit the personal representative, the person allowed to bring suit in the place of the decedent, maintains a wrongful death action. Moreover, these damages arise as a direct consequence of the bodily injury for which relief is sought in this case. The decedent (any person) is in no position to collect damages for injuries suffered by him. If the statute is read literally, the state's liability would cease upon a decedent's death. Therefore, it is important to remember that in this case we are not confronted with the highway liability statute in a vacuum. The wrongful death act, which applies "*[w]henever* the death of a person or injuries resulting in death shall be caused by wrongful act * * * and the act * * * is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages", MCL 600.2922(1); MSA 27A.2922(1) (emphasis added), also must be considered. An action for wrongful death exists not as "a cause of action which survives" the decedent, but as "a new action * * * which can be brought, not for the benefit of the estate, but solely for the benefit of the beneficiaries named in the statute". *Lincoln v Detroit & M R Co*, 179 Mich 189,

---

[21] MCL 600.2922.

[22] *Endykiewicz, supra* at 386-387.

195-196; 146 NW 405 (1914); see, also, *Maiuri v Sinacola Construction Co*, 382 Mich 391; 170 NW2d 27 (1969). Although the deceased person, had he lived, would have been able to maintain an action for damages for the injuries received, damages different from those which the decedent himself might have received are recoverable in the wrongful death action. *Lincoln, supra.* In addition, the wrongful death act stands as the exclusive remedy for injuries resulting in death, MCL 600.2922(1); MSA 27A.2922(1).

We read the penultimate sentence in the above passage to mean that, while the liability to an injured person may have been limited by statute, once that injured person dies and the action becomes an action under the wrongful death act, the wrongful death act controls the damages that may be recovered. The wrongful death act specifically authorizes recovery of damages for "the loss of the society and companionship of the deceased."[23]

This interpretation, in our view, represents a sound interpretation of the wrongful death act. The scope of the act is described in MCL 600.2922(1):

> Whenever the death of a person or injuries resulting in death shall be caused by the wrongful act, neglect, or fault of another, and the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.

The act applies whenever the decedent would have had an action had the injuries not proven fatal. Once the

---

[23] MCL 600.2922(6).

wrongful death act applies, by its clear and unambiguous terms, MCL 600.2922(6) provides for the recovery of damages as follows:

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

Thus, even if we accept the *Wesche* decision as correctly decided, we do not believe that it applies to wrongful death cases, an issue that was not before *Wesche*. That is, even if *Wesche* correctly concludes that a person may not recover damages for loss of society and companionship for the nonfatal injuries of another where the motor vehicle exception to immunity applies, the measure of damages where the accident victim dies becomes controlled by the wrongful death act. The wrongful death act clearly provides that that measure of damages includes damages for loss of society and companionship.

In fact, in their brief, defendants concede that *Endykiewicz* supports plaintiffs' position and that plaintiffs would prevail if *Endykiewicz* remains good law. But, defendants argue, *Endykiewicz* was overruled in *Scheurman v Dep't of Transportation*.[24] We disagree. A footnote in the lead opinion[25] made the following observation:

> We acknowledge *Endykiewicz v State Hwy Comm*, 414 Mich 377; 324 NW2d 755 (1982), which states that the

---

[24] 434 Mich 619; 456 NW2d 66 (1990).

[25] *Id.* at 628 n 18.

highway exception, § 2, need not be strictly construed as being in derogation of the common law after the state abrogated its common-law immunity. However, this case is distinguishable.

Endykiewicz interprets the damages sentence of the statute which provides, "[a]ny person sustaining bodily injury or damage to his property . . . may recover the damages suffered by him . . . ." The Court said that this sentence was ambiguous, therefore, it should not be interpreted to limit a plaintiff's damages. Thus, the dispositive issue in the case centered on the amount of damages *after* liability had attached. It offers no insight as to the interpretation of the standard of liability imposed upon a governmental unit. *Id.* at 382.

Furthermore, "our purpose is to ascertain and effectuate the legislative intent at the time it passed the act." *Reardon* [*v Dep't of Mental Health*, 430 Mich 398, 407; 424 NW2d 248 (1988)]. At the time the governmental immunity act became effective, the state was still shielded by sovereign immunity. Thus, the Court should have strictly construed the immunity act. To this limited extent, we modify *Endykiewicz*.

Defendants argue that this reflects an observation by the Supreme Court that its opinion in *Endykiewicz* was "fundamentally flawed" and that *Scheurman* impliedly rejects plaintiffs' position in the case at bar. We do not share defendants' reading of that footnote in *Scheurman*. First, the Court modified *Endykiewicz*, it did not overrule it. Second, the Court even described that modification as being to a "limited extent." This hardly constitutes an admission that the opinion is fundamentally flawed or that the Court was now completely rejecting the core holding in *Endykiewicz*. Ultimately, all the *Scheurman* opinion does is take issue with a statement in *Endykiewicz* that the immunity statute need not be strictly construed because it was not in fact

in derogation of common law.[26] At no point does *Scheurman* even suggest that the ultimate holding in *Endykiewicz* was inconsistent with a strict construction of the immunity statute. Therefore, we do not accept defendants' proposition that *Endykiewicz* is no longer valid authority. Rather, we conclude that *Endykiewicz* remains controlling precedent and that we are obligated to follow it.

Moreover, even if *Scheurman* can be read as saying that *Endykiewicz* is so fundamentally flawed that it should no longer be recognized as valid authority, we would reach the same result as did *Endykiewicz*. As *Scheurman* itself acknowledges in n 18, *Scheurman* dealt with the issue of liability under the highway exception and *Endykiewicz* dealt with the issue of damages once liability was found. Therefore, *Scheurman* and any other cases cited by defendants that dealt with the liability issue are not authoritative on the issue of damages. And, as discussed above, we have independently reached the same conclusion as *Endykiewicz* regarding the appropriate interpretation to be given the relationship between the immunity statute and the wrongful death act.

Defendants also suggest that the Supreme Court's decision in *Jenkins v Patel*[27] supports the proposition that any limitation on the recovery of damages under the governmental immunity statute must control over any grant of damages under the wrongful death act. We find defendants' analysis to be flawed for a number of reasons. First, defendants argue that *Jenkins* holds that, because the wrongful death act is not the only act that applies to a wrongful death case, the wrongful death act "merely expands the cause of action to allow

---

[26] See *Endykiewicz, supra* at 383.

[27] 471 Mich 158, 165-166; 684 NW2d 346 (2004).

the plaintiff to recover the damages that could otherwise have been recovered only by the decedent, had he or she survived." Actually, what the Court said in *Jenkins*[28] was:

> Clearly, the wrongful death act is not the only act that is pertinent in a wrongful death action. "The mere fact that our legislative scheme requires that suits for tortious conduct resulting in death be filtered through the so-called 'death act', MCL 600.2922; MSA 27A.2922, does not change the character of such actions except to expand the elements of damage available." *Hawkins [v Regional Medical Laboratories, PC*, 415 Mich 420, 436; 329 NW2d 729 (1982)]. That is, a wrongful death action grounded in medical malpractice is a medical malpractice action in which the plaintiff is allowed to collect damages related to the death of the decedent.

We do not read this portion of the *Jenkins* opinion as saying what defendants suggest: that the wrongful death act merely expands the cause of action to allow a person other than the decedent to recover. Indeed, if anything, *Jenkins* supports the conclusion we reach here that the wrongful death act acts to " 'expand the elements of damage available.' "[29] That is, more types of damages may be available under the wrongful death act than would be available to the decedent had he or she survived.

Further, this is not inconsistent with the holding or reasoning in *Jenkins. Jenkins* was not a governmental immunity case, it was a medical malpractice case. The defendants argued that the damages cap on medical malpractice claims[30] applies even where the patient dies, while the plaintiff argued that the cap does not

---

[28] *Id.*

[29] *Id.*, quoting *Hawkins, supra.*

[30] MCL 600.1483.

apply where the action is brought under the wrongful death act. The Court, noting that the wrongful death act is not the only pertinent statute in a wrongful death action, ultimately concluded that the statutes could be read together. More importantly to the current discussion, however, the Court reasoned that the medical malpractice cap limits the ability of the plaintiff to recover full damages, not the damages that are available under the wrongful death act:

> Although § 1483 reduces the damages awarded by the trier of fact, it does nothing to impinge upon the trier of fact's ability to determine an amount that is "fair and equitable." That is, § 1483 does not diminish the ability of the trier of fact to render a fair and equitable award of damages; it merely limits the plaintiff's ability to recover the full amount awarded in cases where the cause of action is based upon medical malpractice and the amount exceeds the cap.[31]

This brings us back to the Court's decision in *Endykiewicz* and its observation that the Legislature could have expressly limited the recovery of consequential or incidental damages, but did not:

> Had the Legislature intended to prohibit the recovery of consequential or incidental damages which arise directly from the infliction of injury to person or property at the hands of the government, it would have affirmatively done so in specific language, utilizing express words of limitation, much as it did with respect to other restrictions on liability contained in [the GTLA].[32]

In short, both *Patel* and *Endykiewicz* recognize that the Legislature may expressly enact a limitation on the damages that would otherwise be recoverable under the wrongful death act. But, as the Court concluded in

---

[31] *Jenkins, supra* at 172.

[32] *Endykiewicz, supra* at 389.

*Endykiewicz,* the establishment of liability for bodily injury and property damage under the governmental immunity act does not operate to create such a limitation.

Finally, defendants argue that if the wrongful death act is read as waiving governmental immunity, such a provision would violate the Title-Object Clause of the Michigan Constitution, which requires the object of every law to be expressed in its title.[33] Because, defendants argue, the wrongful death act is part of the Revised Judicature Act (RJA),[34] and the title to the RJA includes no provision for dealing with governmental immunity, the wrongful death act cannot modify the immunity established under the GTLA. That might well be a valid syllogism if it were not based on a false premise, namely that we read the wrongful death act as modifying the immunity granted under MCL 691.1405. MCL 691.1405 controls *when* the government is liable: whenever the negligent operation of a government-owned motor vehicle causes bodily injury or property damage. The wrongful death act merely describes those damages that may be recovered when that bodily injury for which the government is liable results in death. And we believe that establishing damages that a jury may award in a civil action does come within the title of the RJA.

For these reasons, we conclude that, even if *Wesche* correctly determined that there may be no recovery for loss of society and companionship for claims brought under the motor vehicle exception to governmental immunity where the injured person did not die, that holding does not apply to wrongful death cases. We hold that, where the injured person dies as a result of the

---

[33] Const 1963, art 4, § 24.

[34] MCL 600.1 *et seq.*

injuries sustained in the motor vehicle accident and the case becomes one brought under the wrongful death act, the full range of damages provided under the wrongful death act are not limited by the provisions of MCL 691.1405 that established the government's liability for bodily injury and property damage resulting from a motor vehicle accident. Accordingly, we affirm the trial court's denial of summary disposition for the defendants regarding plaintiffs' claims for the loss of the society and companionship of their daughter.

III

This brings us to the final area of claims, any claim by Robert Kik against the township and its EMS (but not Sbraccia individually) for the loss of consortium of his wife relating to the injuries that she sustained in the accident. These claims fall squarely within the scope of *Wesche* and, therefore, *Wesche* would require that we reverse the trial court's denial of summary disposition regarding these claims and grant summary disposition for the township and its EMS.

But we are not convinced that *Wesche* was correctly decided. The analysis in the opinion is somewhat limited. *Wesche* quotes MCL 691.1405 to state that governmental agencies are "liable for bodily injury and property damage" and it concludes that loss of consortium does not constitute bodily injury or property damage. It reaches that conclusion solely on the basis of this Court's decision in *Wessels v Garden Way, Inc*,[35] and the statement therein that loss of consortium is a separate cause of action that is a derivative claim and dependent on the injured spouse's recovery of damages for the

---

[35] 263 Mich App 642; 689 NW2d 526 (2004).

injury.[36] While that is true, it hardly compels the Court's conclusion that "loss-of-consortium claims do not encompass bodily injury or property damage . . . ."[37] Nor does it compel the conclusion that the motor vehicle exception only authorizes recovery for damages for the actual physical injury and not damages arising out of that injury.

While a broad term, "consortium" concededly does not encompass a physical injury. Justice SMITH, in *Montgomery v Stephan*,[38] described it as follows:

> The legal term for [plaintiff's] asserted loss is that of "consortium." It has been variously defined, sometimes in terms enormously complex as the judges followed the habit of lawyers of never using 1 word where 2 may be employed. One of the most careful of the studies of consortium, in fact, attributes to the redundancies of common-law pleading much of the confusion and injustice prevalent in this field. Actually, all that consortium means is conjugal fellowship. But the pleader at the common law (following his practice in deeds, wills, contracts, and what-not) alleged the loss of love, companionship, affection, society, comfort, sexual relations, services, solace, and or [sic, on] and on until his dictionary ran dry. It does, indeed (since it is fellowship between man and wife), embrace all of these things, and more. But the verbosities of common-law pleading should not lead the court to absurdities, such as the conclusion, for instance, that consortium has an economic side, for loss of which one may recover, and a sentimental side, for loss of which no recovery may be had. What of the spiritual side? The parental side? The carnal side? It would be a reckless semanticist who would assert that he was able, justifiably, to place each of the various elements of conjugal fellowship in one or the other of the

---

[36] *Wesche, supra* at 279, citing and quoting *Wessels, supra* at 648, and *Berryman v K mart Corp*, 193 Mich App 88, 94-95; 483 NW2d 642 (1992).

[37] *Wesche, supra* at 279.

[38] 359 Mich 33, 35-36; 101 NW2d 227 (1960).

suggested pigeonholes, just as it would be a bold artist who would assert that he could categorize all of the hues of the spectrum into 2 pigeonholes, one marked "light," the other marked "dark." Such efforts may be amusing as mental exercises, but when judges seriously put them forward as grounds for decision, absurdities will result and injustice is bound to be done.

It might be said then that *Wesche*, while perhaps short on analysis, nevertheless leapt to the correct conclusion because the loss of consortium is not a physical injury and MCL 691.1405 only allows for compensation of bodily injuries (or property damage), that is to say, for the physical harm done. But such a conclusion is based on a false premise—that the statute only compensates for the physical harm.

The ultimate effect of the holding in *Wesche* is to say that the only compensation that may be awarded under MCL 691.1405 is for the actual physical injury itself. That is, for example, if a person were to lose a limb in an automobile accident caused by a governmental employee negligently operating a government-owned motor vehicle, *Wesche* would decree that the victim could recover the value of the lost limb, because that is a "bodily injury," but could recover nothing for the pain and suffering or impaired earning ability that might be occasioned by the loss of the limb because those would represent "other damages deriving from the . . . injury."[39]

The fundamental flaw in *Wesche* is that it confuses the concepts of liability and damages. MCL 691.1405 concerns the issue of liability and describes one of the conditions for which the government does not enjoy immunity: when the negligent operation of a motor vehicle owned by a governmental agency causes bodily

---

[39] *Wesche, supra* at 279.

injury or property damage. The statute does not limit or otherwise establish the types of damages that are recoverable from the government when liability is established. For that matter, the statute does not address, in either terms of inclusion or exclusion, who may recover damages arising from such bodily injury. In other words, the appropriate reading of MCL 691.1405 is that the government is not immune from suit when the negligent operation of a government-owned motor vehicle results in bodily injury. Once such liability is established, the statute is silent regarding damages, meaning that the plaintiff may recover whatever damages arise from the bodily injury. One such category of those damages, as even *Wesche* acknowledges (perhaps inadvertently), is the loss of consortium, which is only recoverable as an element of damages arising out of an injury.

Indeed, this brings us back to where we started, the Supreme Court decision in *Endykiewicz*. In that case, the Court rejected the argument that the statute establishing the defective highway exception should be read as limiting damages. It concluded that MCL 691.1402 "does not exist in whole or in part as a limitation on recovery" and that it was instead "an expansive provision defining the liability of a governmental agency."[40] Although we are dealing with a different statute, somewhat differently worded, we believe that the wording of the two statutes is sufficiently similar to permit the same observation to be made for MCL 691.1405. Moreover, *Endykiewicz*[41] made the following observation:

> Had the Legislature intended to prohibit the recovery of consequential or incidental damages which arise directly from the infliction of injury to person or property at the

[40] *Endykiewicz, supra* at 389.

[41] *Id.*

> hands of the government, it would have affirmatively done so in specific language, utilizing express words of limitation, much as it did with respect to other restrictions on liability contained in [the GTLA].

This statement is equally applicable to the motor vehicle exception as it is to the defective highway exception.

To summarize, MCL 691.1405 establishes when the government is liable: whenever the negligent operation of a motor vehicle owned by it causes bodily injury or property damage. The statute does not limit the recovery of any type of damages that arise out of that bodily injury. Plaintiffs allege in the case at bar that Rebecca Kik was injured because of the negligent operation of a motor vehicle owned by a governmental entity. If that allegation is proven, then the governmental entity is liable under MCL 691.1405. And, we believe, it is liable under that statute for any damages arising from that bodily injury. If Robert Kik proves a loss of consortium, that would be one type of damage arising from his wife's bodily injury sustained in the motor vehicle accident. Therefore, we conclude that MCL 691.1405 does not limit his right to recover those damages.

For these reasons, we conclude that *Wesche* was incorrectly decided. We apply *Wesche* only because we are obligated to do so under MCR 7.215(J). We disagree with the conclusion of *Wesche* and, were we not obligated by MCR 7.215(J) to follow *Wesche*, we would reach a different conclusion for the reasons expressed above. Because we are obligated to follow *Wesche*, we reverse the trial court's denial of summary disposition regarding Robert Kik's loss of consortium type claims arising from his wife's injuries with respect to defendants Kinross Charter Township and Kinross Charter

Township EMS.[42] On remand, the trial court shall enter an order granting summary disposition in favor of those two defendants with regard to that portion of Robert Kik's claims.

The trial court's denial of summary disposition based on governmental immunity is affirmed with respect to all claims against the individual defendant, John-Christopher Sbraccia, and with respect to those claims arising out of the death of Sharon Kik. The trial court decision is reversed only with respect to the denial of summary disposition regarding the loss of consortium type claims of Robert Kik arising out of the injuries to his wife, Rebecca Kik, and only with regard to defendants Kinross Charter Township and Kinross Charter Township EMS. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs with respect to defendant Sbraccia only. Defendants may not tax costs as they did not prevail in full.

---

[42] We do note that if a conflict panel is convened pursuant to MCR 7.215(J)(3) and that panel agrees with our decision today and overrules *Wesche*, that decision would also have the effect of providing a second basis for denying summary disposition with respect to the loss of society and companionship claims arising out of Sharon Kik's death. We did not invoke MCR 7.215(J) with respect to part II of our opinion because, having found *Wesche* to be inapplicable to wrongful death actions, the correctness of the *Wesche* decision is not outcome-determinative to the issue resolved in part II of this opinion and, therefore, a special panel may not be convened with respect to that issue. MCR 7.215(J)(3)(a).